ASSETS DEVELOPMENT COMPANY, APPELLANT, v.
ALBERT C. WALL, SUBSTITUTED ADMINISTRA-
TOR, RESPONDENT.

Submitted March 15, 1922—Decided November 20, 1922.

1. The Circuit Court has power to open a judgment upon good cause
   shown at any time while the cause remains under its control,
   provided the moving party embraces the first opportunity of pre-
   senting his case.
2. An application to open a judgment regularly entered is addressed
   wholly to the discretion of the court in which it is rendered and
   an appeal ordinarily will not lie to review the determination of
   that court.
3. A final decree, made by the surrogate after the time limited by
   the rule to bar creditors has expired, when pleaded, of itself estab-
   lishes all the facts essential to the protection of the executor,
   and it cannot be attacked collaterally.
4. A decree to bar creditors, when once entered, protects not only
   the executor or administrator then in office, but also all those
   who succeed him in such office, against suits by creditors whose
   claims come within the bar of the decree.

On appeal from the Hudson County Circuit Court.

For the appellant, *Robert H. McCarter* and *George W. C.
McCarter.*

For the respondent, *Albert C. Wall,* substituted adminis-
trator, *pro se.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This action was brought by
the Assets Development Company, as plaintiff, against Wall,
as substituted administrator of the estate of F. Augustus
Heinze, deceased, to recover certain moneys alleged to be
due upon a promissory note made by the defendant's intestate
to one Geer and assigned by him to the plaintiff. The
plaintiff averred that a demand for payment of this claim
had been duly filed with the defendant as substituted adminis-

trator, before suit was brought, and the defendant in his answer admitted this fact, but denied the existence of the indebtedness. The case went to trial on these pleadings and resulted in a verdict in favor of the plaintiff. The judgment was entered in May, 1920. In the following January the defendant applied for a rule opening the judgment and permitting him to set up as a defence to the plaintiff's claim a rule to bar creditors and a decree entered on that rule, both of which had been taken out by his predecessor in the administratorship, and, of course, prior to the service of the demand for payment made upon him by the plaintiff. After argument and consideration the application was granted; and the substituted administrator then filed an answer setting up the rule and the decree as a bar to plaintiff's action. To this the plaintiff replied that no proof had ever been made to the surrogate of the posting or publication of the notice to creditors required by the statute as a prerequisite to the granting of a decree barring creditors (although the decree itself contains a recital that it had been made to appear, by satisfactory proof, that such notice had been published and posted), and that, therefore, the decree was absolutely null and void for lack of jurisdiction on the part of the surrogate to make it. On motion of the defendant, this replication was struck out by the court and a rule entered directing judgment in favor of the substituted administrator.

The first contention is that the court erred in directing that the judgment originally entered should be opened, notwithstanding that it appeared on the hearing of the application that the defendant had no knowledge of the entry of the rule or decree at the time of the original trial, and did not discover the fact of such entry until a short time before he made his application to open the judgment.

That the courts of this state, whose practice and procedure are in accordance with the rules and regulations of the common law, have power to open judgments upon good cause shown is settled beyond controversy. It was exercised by the Supreme Court as early as the year 1795, in the case of *Miller* v. *Alexander,* 1 *N. J. L.* 400, and has continued to

be exercised from that time to the present whenever it was properly invoked. And the court may exercise this power at any time while the cause remains under its control, provided the moving party embraces the first opportunity he has of ·presenting his case. *Bell* ads. *Kelly,* 17 *Id.* 270. It is equally well settled that by the common law an application to open a judgment regularly entered is addressed wholly to the discretion of the court in which it was rendered, and that, consequently, a writ of error (an appeal under our present practice) will not lie to review the determination of that court. *Smith* v. *Livesey,* 67 *Id.* 269.

We conclude that the first ground upon which this appeal is rested is without legal merit.

The next contention made by the appellant is that the court erred in striking out the reply to defendant's answer setting up the rule and decree barring creditors. It is conceded that as a general rule the orders and decrees of the surrogate are not open to attack in a collateral proceeding, but it is argued that this legal principle does not apply where the order or decree is attacked upon the ground of lack of ·jurisdiction in the surrogate to make it, and *Quidort's Admr.* v. *Pergeaux,* 18 *N. J. Eq.* 472, 477, and *Ryno's Excr.* v. *Ryno's Admr.,* 27 *Id.* 522, 524, are cited as supporting this contention. In the Quidort case .the situation was this: The complainant, as administrator of Quidort, recovered a judgment against the defendant, Pergeaux, and issued execution thereon, which was returned unsatisfied. He then filed his bill in chancery, charging that certain premises standing in the name of Pergeaux's wife had been purchased by the husband and the title placed in the wife's name for the purpose of defrauding his (the husband's) creditors. In this situation the defendants attempted to show that Quidort left a will and that therefore the grant of administration to the complainant by the surrogate was unlawful and void. It was held that the court could not consider the question of the right to administration and that the act of the surrogate in granting the letters could only be reviewed by appeal, the court saying, "Like the acts of all other regularly constituted

tribunals, the acts of the surrogate cannot be impeached collaterally. The only question that can be made is whether he had jurisdiction. If the supposed intestate was not dead, or if letters lawfully granted to someone else were in existence, the grant would be void." In the Ryno case the surrogate issued letters testamentary to one V. upon the estate of Sarah Ryno, a married woman, she having named him as executor in her will. Two years later the same surrogate granted letters of administration to the decedent's husband, and both the executor and the administrator claimed to be entitled to a legacy left to the decedent by the will of her uncle. Thereupon the executor of the uncle filed a bill of interpleader against them, and it was held by this court on appeal that "by the grant of probate the power of the surrogate was exhausted and his jurisdiction over the subject-matter was at an end," and that the subsequent grant of administration was absolutely void and conferred no right upon the administrator. It will be observed that in each of these cases the question involved was the right to attack in a collateral proceeding the action of the surrogate in appointing a representative of the decedent's estate for the purpose of its administration and settlement, upon the ground that he was without jurisdiction to make the appointment—a question essentially different from that involved when an attack is made upon a decree barring creditors taken out by the duly constituted agent or representative of the estate in the due course of its administration. This latter question, it has been held, is not within the principle declared in the two cases cited by counsel for the appellant. In the case of *Ryan* v. *Flannagan, Admr.*, 38 *N. J. L.* 161, the court expressly declared that a final decree made by the surrogate after the time limited by the rule to bar creditors had expired, "when pleaded, of itself establishes all the facts essential to the protection of the executor, and it cannot be attacked collaterally" (*p.* 164). This declaration is repeated in the case of *Seymour* v. *Goodwin,* 68 *N. J. Eq.* 189; *affirmed on appeal,* 69 *Id.* 833. And a conclusive reason for so holding is pointed out in the opinion in *Emson* v. *Allen,* 62 *N. J. L.*

491; namely, that by force of section 70 of our present Orphans' Court act, which deals with the matter of the entry of final decrees after the expiration of the time limited in the rule to bar creditors (*Comp. Stat., p.* 3835), such decrees, when made by the surrogate, stand on precisely the same footing as those of the Orphans' Court. And the existence of the facts upon which the right of the Orphans' Court to adjudicate depends cannot be questioned in a collateral proceeding. In such a proceeding these facts will be presumed and no evidence can be received to contradict them, such intendments being *presumptiones juris et de jure.* And the reason why this is so is pointed out by Chief Justice Beasley in an interesting opinion delivered in the case of *Plume* v. *Howard Savings Institution,* 46 *N. J. L.* 211, 229. We conclude, therefore, that this ground of appeal is also without legal merit.

One other ground of appeal remains to be considered, and that is that, by the true construction of the pertinent provisions of our Orphans' Court act, the decree barring creditors only protects the executor or administrator upon whose application it was entered, and does not bar a creditor of the estate from suing a substituted administrator who has been appointed after the entry of the decree. In other words, that the purpose of the legislation was merely to protect the then representative of the decedent's estate from suit by creditors, and not to protect the estate itself, pending its settlement, against the prosecution of claims which were barred by the decree when it was entered. The basis of the argument is that, by section 70 of the statute, a creditor who has not brought in his claim within the time provided by the rule to limit creditors taken out by the executor or administrator "shall by such decree be forever barred of his action against *such* executor or administrator." So illogical a purpose is not to be attributed to the legislative body unless it is expressed in the statute in words so clear as to compel the construction attempted to be put upon it by counsel. Its result would be to make the ultimate settlement of decedents' estates depend not only upon a compliance with the orderly

procedure provided by the statute, but also on the continued life of an executor or administrator from the time of his appointment until the final settlement of the estate; and also upon the continuance of the life of his successor or successors from the time of his or their succession until such final settlement. For, according to the logic of the argument, it would seem that, upon the death, resignation or removal of an executor or administrator, or of the several persons successively appointed as the authorized representative for the settlement of the decedent's estate, the new appointee would be compelled to take out a new decree to bar creditors, which apparently he could only do, under section 70 of the statute, by proof made by him that his predecessor had complied with the earlier provision of the statute requiring the posting and publication of a notice to creditors within the time indicated in the rule to limit; proof which after the lapse of time it might be difficult, if not impossible, for him to procure. Considering all of the provisions of the statute dealing with the settlement of decedents' estates, we have no doubt that the primary purpose of the legislature was to protect *the estate,* while in process of settlement, from claims not presented or prosecuted within the time limit fixed by the rule to limit creditors and not within the exceptions provided by the statute, thus making its final settlement possible within a reasonable time, and that for the accomplishment of this purpose it was intended that the decree to bar, when once entered, should protect not only the executor or administrator then in office, but also all those who should succeed him in such office, against suits by creditors whose claims come within the bar of the decree.

The judgment under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK, JJ. 15.