FRANK S. DE GRUCHY, complainant,

*v.*

WILSCOT LAND COMPANY et al., defendants.

[Decided February 19th, 1932.]

*Messrs. Corbin & Harty (Mr. William A. Sumner,* of counsel), for the complainant.

*Messrs. King & Vogt,* for the defendant Mary R. Cobb.

LEWIS, V. C.

On July 26th, 1920, the Valley Realty Company executed and delivered a mortgage in the sum of $9,000 to William W. Scott, who thereafter assigned it to Frank S. De Gruchy, the complainant herein. The mortgage having become due and being unpaid, complainant filed his bill of foreclosure, to which defendant Mary Cobb, the junior mortgagee, interposed the defenses of *res adjudicata* and usury.

In support of the first mentioned of her defenses, said defendant offered in evidence the original file of this court, docket 65/707, which is a suit wherein Frank S. De Gruchy is complainant and the Valley Realty Company et al. are defendants, instituted in 1927 apparently for the purpose of foreclosing the same mortgage here involved, and which suit was prosecuted to a final decree and sale of the mortgaged premises, said sale having been subsquently confirmed by an order of this court entered in said proceeding. It is by reason of the existence of that proceeding and the adjudication therein entered, that it is here contended on behalf of said defendant that the matter here attempted to be litigated is already *res adjudicata.*

But this contention overlooks the fact that complainant's bill specifically charges that those proceedings, having been instituted and prosecuted without his knowledge or consent, constituted a fraud upon this court; that the final decree therein entered was procured by fraud, and that it, therefore, should be set aside and annulled. Such is the relief which complainant, by his present bill, specifically seeks and prays for, in addition to his prayer for the foreclosure of the mortgage in question.

It clearly appears from the evidence, which is entirely undisputed, that complainant, immediately after he had acquired the custody of the bond, mortgage and assignment, which was sometime in February of 1927, after their return to him from the registry office, placed them in his safe deposit box, where they continued to remain until sometime in April of 1930, when he, having learned through the newspapers of the various defalcations and the absconding of Winfield Scott, became suspicious, withdrew these documents from his vault and brought them to the office of his present solicitors for the purpose of having them investigate the status of his mortgage. As a result of their investigation, he subsequently, and for the first time, learned from his said solicitors of the existence of the suit and final decree whereon the defendant herein predicates her defense of *res adjudicata.*

An examination of the original file in that suit discloses

that it was instituted by Winfield Scott—a solicitor of this court who has since absconded—as the apparent, though in fact not authorized solicitor of complainant. It further appears that the complainant herein neither testified, signed any papers or pleadings, nor appeared in nor knew anything of the existence of that suit. The affidavit with respect to the amount due under the mortgage, upon which was based the master's report, in that suit, was subscribed and sworn to not by complainant but by another.

Furthermore, complainant here testified that he had never engaged Winfield Scott as his solicitor; that he had never instructed or authorized him to institute the foreclosure proceedings in question, and that immediately upon learning of their existence, which was sometime in 1930, he caused his present bill to be filed. Complainant also testified that he, as was his custom, had continued to receive the payments of interest on his mortgage from Winfield Scott right up until July, 1929, which, of course, was long after the final decree was entered and the sale confirmed in the foreclosure proceedings now under attack. As to all of these facts, his testimony stands wholly unquestioned and uncontradicted.

Upon a physical examination of the bond, mortgage and assignment in question, all of which were here produced and offered by complainant in evidence, I found all of them to be completely free and devoid of any markings or other evidence indicating that they were ever presented to or marked by the master who reported upon them, as exhibits in that case. Nor did defendant produce the master, who undoubtedly was available, to explain why he had neglected to so mark them, if, in fact, they were produced before him, as certified to by his report. These facts, coupled with complainant's undisputed testimony that they were placed in his safe deposit box long before the institution of that foreclosure proceeding, where they continuously remained until long after said proceedings had been terminated, thoroughly convinces me that Winfield Scott must have produced not these documents but some forged facsimiles thereof before the master, who, undoubtedly being unaware of the fraud being

perpetrated upon him, marked those as the exhibits, upon which was based his report, following which the final decree was entered. Of a more flagrant, wanton and outrageous fraud perpetrated upon this, or any other court, I cannot conceive. I am fully satisfied that those proceedings were fraudulently conceived and prosecuted, without the knowledge or consent of the complainant herein, and consequently must be set aside and annulled.

But the defendant contends that the final decree entered in that proceeding, never having been reversed or modified, is final and conclusive upon all of the parties to it and, as such, is entirely immune from attack or impeachment in a collateral proceeding. The principle thus invoked, while unquestionably sound in law and equity (*In re Leupp, 108 N. J. Eq. 49*), is, however, wholly inapplicable to the case at bar. The attack upon said decree here made by complainant is not a collateral but a direct one. This is conclusively demonstrated by his very bill of complaint wherein he specifically charges that said decree was procured through a fraud perpetrated upon this court and prays for its annulment by reason thereof. The charge as thus laid is conclusively established by the undisputed evidence, with the result that complainant is clearly entitled to the relief prayed for. Citation of authority is entirely unnecessary to demonstrate that this court, either upon its own motion or that of the aggrieved party, will unhesitatingly set aside and annul any of its decrees or orders shown to have been procured by means of a fraud perpetrated upon it.

Whether proceedings looking towards the annulment of such a decree may be initiated by an original bill no longer, at least in this state, appears to be an open or debatable question. In the case of *Whittemore* v. *Coster, 4 N. J. Eq. 438,* this court long ago held that it would sustain an original bill filed for the purpose of correcting one of its former decrees. In his *Equity Pleadings 342* § *426,* Judge Story says: "There is no doubt of the jurisdiction of courts of equity to grant relief against a former decree, where the same has been obtained by fraud and imposition; for these will infect

judgments at law, and decrees of all courts; but they annul the whole in the consideration of courts of equity. This must be done by an original bill; and there is no instance of its being done by petition, though it seems once to have been thought that a decree as well as an interlocutory order, could be set aside for fraud by petition only. Where a decree has been so obtained the court will restore the parties to their situation, whatever their rights may be."

Defendant, as a subsequent encumbrancer, may unquestionably avail herself of the defense of usury. *Vassar Holding Co.* v. *Dunlap, 103 N. J. Eq. 363,* and cases therein cited. If successful in establishing said defense, she would be legally entitled to have all sums received by complainant in excess of the legal rate of interest credited on the amount of money due on his mortgage. *Nightingale* v. *Meginnis, 34 N. J. Law 461; Trusdell* v. *Jones, 23 N. J. Eq. 121; affirmed, Ibid. 554; Terhune* v. *Taylor, 27 N. J. Eq. 80.*

However, as has been often said, usury is a defense not favored in equity. Not only must it be strictly pleaded, but the particular facts and circumstances of the alleged usurious agreement must be set out in the answer. *The New Jersey Patent Tanning Co.* v. *Turner, 14 N. J. Eq. 326; Crane* v. *Homeopathic Mutual Life Insurance Co., 27 N. J. Eq. 484; Mooney* v. *Pelnick, 104 N. J. Eq. 357.* Being an affirmative defense, all the authorities hold that the burden of proving it, by a preponderance of the evidence, is upon him who asserts it. *Brolasky* v. *Miller, 8 N. J. Eq. 789; Conover* v. *Van Mater, 18 N. J. Eq. 481; Taylor* v. *Morris, 22 N. J. Eq. 606.*

Neither the defendant herself nor anyone else was produced to testify on her behalf. The only evidence in the case offered on her behalf consisted of her own bond and mortgage and the original file in the already referred to fraudulent foreclosure proceeding. Nowhere in the case is there to be found even a scintilla of evidence with respect to the existence or making of a usurious arrangement or agreement between complainant and the mortgagor, or anyone else; or that any payments were made to him as a result of any such arrangement or agreement.

All that does appear is that complainant, on cross-examination, testified that, in addition to the semi-annual interest payments, he also received the sum of $75 per month "as a fee for the risk of taking the mortgage" as termed by him. Defendant, however, made no attempt to show or prove that these monthly payments were made as a result of any promise or agreement on complainant's part to forbear suit upon or extend the term of his mortgage, or as a result of any corrupt agreement or bargain to contravene the statute.

It is upon the evidence above mentioned alone that defendant possibly can hope to and does rely to substantiate her said defense. That this evidence falls far short of the requirements and the necessary *quantum* of proof as prescribed by the court of errors and appeals in the cases of *Taylor* v. *Morris, supra,* and *Crane* v. *Homeopathic Mutual Insurance Co., supra,* is, indeed, most apparent.

Even if it could be said that this testimony renders it highly probable that the monthly payments in question were made as a result of a usurious bargain or understanding, it would avail defendant of naught. Usury is a defense that must be clearly proved, not left to conjecture. From a very early date, our court of errors and appeals, speaking through Mr. Justice Potts, in the case of *Brolasky* v. *Miller et al., supra,* has said: "Usury should be strictly proved. It is not sufficient for the party who sets it up to make out a probable case. We cannot undertake to guess away men's rights upon vague or doubtful testimony."

And in the case of *Taylor* v. *Morris, supra,* Mr. Justice Depue, in speaking for that court, used this following unmistakable language: "The burden of proof is on the defendant, and the defense cannot be supported by probabilities or suspicions, however strong. If allowed to prevail, it must be sustained by such preponderance of evidence as establishes the truth of the allegations on which it depends, beyond a reasonable doubt."

Complainant is entitled to a decree annulling the decree entered in the foreclosure proceedings here assailed, adjudging the entire principal of his mortgage, with interest thereon

from date last paid, to be due, and declaring same to be prior and paramount in lien to that of defendant's mortgage, and also directing a sale of the mortgaged premises. Form of decree to be settled on notice.