ROSE DROTAR AND FRANK A. DROTAR, HER HUSBAND, RESPONDENTS, v. PENNSYLVANIA RAILROAD COMPANY AND ALBERT WHITE, APPELLANTS.

Submitted January 18, 1938—Decided May 11, 1938.

Before Brogan, Chief Justice, and Justices Trenchard and Parker.

For the appellants, *John A. Hartpence.*

For the respondents, *Kenneth J. Dawes.*

The opinion of the court was delivered by

Parker, J. The claim of the plaintiffs was that Mrs. Drotar, having alighted at Trenton from a train of the defendant company, and having passed into the station, was on her way to a telephone therein for the purpose of communicating with her husband, when she slipped on what was claimed to be a greasy or oily spot on the floor, and fell, sustaining injuries for which the jury awarded verdicts to her and her husband against the railroad company and against the defendant White, who was the janitor employed by the company, whose duty it was to attend to the floor.

The appeal is submitted on briefs, and the grounds of appeal argued are, first, that the trial court refused to nonsuit for several stated reasons, and secondly, that the court refused to direct a verdict for the defendants or for the railroad company, on the same grounds. Those that are material for present purposes are:

"3. There was no proof of previous notice of the defect to the defendants Albert White and The Pennsylvania Railroad Company.

"4. As to the defendant The Pennsylvania Railroad Company, the proof of notice to Albert White under the facts of this case is not [proof of] notice to the defendant The Pennsylvania Railroad Company.

"5. There was no proof that the defect had existed for a sufficient length of time to have enabled the defendants to have discovered it in the exercise of reasonable care."

As to the existence of the oily spot at the time of the accident, there was plainly evidence to go to the jury, both direct, as, for example, the testimony of Mrs. Drotar herself, and

circumstantial, such as the mark on the spot itself of something having slid there, and the greasy spot on her coat after the fall.

The next essential link in the chain of proof was, of course, evidence to show that the dangerous spot, if it existed, had come to the notice of the defendants, the railroad company and its janitor, long enough before the plaintiff slipped on it to have been rectified in the exercise of reasonable care; or that it had existed long enough to be so noticed and rectified in the exercise of such care. As to this, we think that the proof failed as to the railroad company for the reason that there was nothing in the evidence binding on that company to show either that the existence of the spot was known, or how long it had been there. The plaintiffs' counsel called the janitor himself as a witness and dismissed him after a few formal questions such as that he was janitor of the station at the time, and that part of his duty consisted in cleaning the floor and keeping it in order. He was then excused without cross-examination, and the plaintiff husband took the stand and testified that the janitor had told him that he had seen that spot on the floor but "did not get around to clean it up before Mrs. Drotar had fallen." This was denied by the janitor when called as a witness for the defendants but, of course, it became a question for the jury whether that admission had been made. Assuming that it had been made, it was, of course, evidential as against the janitor who made it; but on well settled principles it was no part of the janitor's employment, as such, to make admissions for the railroad company, his employer. *Blackman* v. *West Jersey and Seashore Railroad Co.*, 68 *N. J. L.* 1; *Huebner* v. *Erie Railroad Co.*, 69 *Id.* 327; *King* v. *Atlantic City, &c., Co.*, 70 *Id.* 679, and many other cases. There was nothing in the janitor's testimony when called by the defendants that aided the plaintiffs' case in any way. He testified in general that he was away at his lunch from one o'clock until three and that the accident occurred in the meantime; that when he got back there were certain chalk marks on the floor around a stain that had been there, together with a number of other spots,

because the floor was an old floor. He said also that he had cleaned the floor before he went away and cleaned it after he came back.

So far, therefore, as relates to the case against the railroad company, there was evidence on which the jury were entitled to find that there was a slippery spot on the floor; that the female plaintiff slipped on that spot and fell, and was injured in consequence. Here the proof stops so far as the company was concerned. There was nothing in the case to show how long the spot had been there, and on this state of the proofs the case seems to be controlled by the opinion of this court in *Schnatterer* v. *Bamberger,* 81 *N. J. L.* 558; so at the time when the plaintiff rested the motion for nonsuit should have been granted on the grounds urged by counsel for defendants that there was no legal evidence to show that the railroad company had any notice as to the condition of the floor, and no evidence to show that the condition had existed for a sufficient length of time for notice to be imputed to it. The factual situation was not helped by any testimony received after the motion for nonsuit had been denied, so that the error in refusing to nonsuit as to the company was not cured. Moreover, there was a motion for direction of verdict for each defendant separately on the same grounds as those urged on the nonsuit, and that the motion should have been granted so far as concerned the Railroad Company.

As to the defendant White, we think that there was a case to go to the jury, predicated on their possible finding with regard to his alleged admission. White was identified in the court room by Drotar, the husband of the injured woman. He was also called for the plaintiff and said that he was the janitor at the time. Then the husband testified that White had said to him "that he had seen that spot on the floor but did not get around to clean it up before Mrs. Drotar had fallen." If the jury took the view in connection with the testimony as to the existence of the spot and Mrs. Drotar slipping on it that White had said this, naturally his admission was evidential against him, though not against his employer, and a verdict against him would stand as against a motion to nonsuit or direct.

At common law in case of joint defendants a reversal as to one defendant would be a reversal as to all. *Peterson* v. *Middlesex and Somerset Traction Co.*, 71 *N. J. L.* 296. In that case, as in this, the suit was against both master and servant, and a reversal as to the master was held to work a reversal in the case of the servant also. That case was decided in 1903; and since the Practice act of 1912 and the adoption of rules thereunder, cases have occurred in which a reversal was had as to one or more appellants but the judgment was affirmed as to the others. This, however, was, and is, discretionary with the court under rules 131 and 143, which are reproduced in the recent case of *Roberts* v. *Saunders,* 118 *N. J. L.* 548 (at *p.* 552), in which case the Court of Errors and Appeals deemed it advisable in its discretion to reverse as to all the defendants and have a new trial of the case at large. We think that the judicial discretion should be similarly exercised in the present case, and as we consider there is clear error as regards the Pennsylvania Railroad Company leading to a reversal as to that company, it is advisable that reversal be total as it necessarily would be at common law.

The judgment is accordingly reversed, to the end that a *venire de novo* issue.