IRENE RAFFETTO AND JOSEPH, HER HUSBAND, RE-
SPONDENTS, v. WARNER BROS. THEATRES, INCOR-
PORATED, AND STANLEY COMPANY OF AMERICA, AP-
PELLANTS.

Submitted October 4, 1938—Decided November 25, 1938.

Before Justices TRENCHARD, PARKER and PERSKIE.

For the appellants, *Walter X. Trumbull* (*John A. Errico,*
of counsel).

For the respondents, *Ambrose J. Peraino.*

The opinion of the court was delivered by

PARKER, J.    The female plaintiff with her husband was
one of the audience at a moving picture theatre claimed to
have been operated by the defendant corporation.   The per-
formance over, she and her husband were leaving the theatre,
and for that purpose had to descend a staircase.   On the third
or fourth step the heel of Mrs. Raffetto's shoe "caught in some
obstruction on the stair," and she fell forward down the stairs,
sustaining physical injury for which she sued, her husband
joining his claim for damages *per quod.*   The case was tried
without jury, and separate judgment entered in favor of each
plaintiff.   Defendants appeal.

The case belongs to a class of which *Schnatterer* v. *Bamberger*, 81 *N. J. L.* 558, is typical. To support a recovery it was necessary for plaintiffs to show, (1) that there was a defect in the staircase, which defect caused the accident; and (2) that the defect had been brought to the notice of the proprietor sufficiently long enough before the accident to have been remedied in the exercise of reasonable care, or at least existed long enough to have been discovered in the exercise of reasonable care, and rectified by the use of reasonable diligence.

There was evidence for a jury, or a judge sitting as a jury, that there was a defect existing at the time of the accident—an obstruction which caught Mrs. Raffetto's heel, and which, according to testimony for the plaintiffs was the metal nosing of a stair tread, the screws of which were loose at one end and which after the accident was raised a quarter of an inch or more. As to how long it had been in that condition and whether the condition had been known or should have been known to the management, there was no evidence except testimony to certain alleged admissions by one Helwig, the manager of the theatre. He was called as a witness for plaintiffs, and testified that among his duties were inspection of the building every day, and to see to the repair of anything out of order. He was not asked whether the nosing was out of order either before or after the accident, but when called by defendant testified that it was in good order both before and after. But Mrs. Raffetto testified, over objection and exception, that she heard him say to someone "that should have been attended to last week;" and her husband testified that he showed the strip in a defective condition to Helwig, and (again over objection and exception) that Helwig said he "thought that was attended to last week." Also (still over exception) that he said to an usher, "now, I told you to fix it last week." What he said to the usher, as testified to by the husband (and no doubt this is the same incident testified to by the wife) was said a very short time after Mrs. Raffetto had fallen and been picked up, and after the defective condition of the nosing as claimed by the plaintiffs had been pointed out to the mana-

ger. This appears to be on a slightly different basis from the testimony of the husband as to what the manager said to him. The latter, plainly enough, would be direct admission. What he said to the subordinate employes might perhaps be classified as words spoken in the performance of his legitimate duty, particularly as he had testified that it was his duty to inspect regularly and see that things were in good condition. The distinction was drawn by Chief Justice Beasley in his usual lucid manner in the case of *Ashmore* v. *Pennsylvania Steam Towing, &c., Co.,* 38 *N. J. L.* 13. The opinion might well be read, but need not be quoted at length here, because the two syllabi epitomize the distinction. They are as follows:

"1. Statements made by a general agent, in order to be evidence against his principal, must have been made in the course of the business entrusted to him.

"2. This rule excludes all statements or narrations of such agent, which, although relating to the business of the principal, were not made in execution of the agency."

We are clearly of opinion that the alleged statement made to the husband was not one in the performance of the duties of the manager, and was therefore incompetent, within the ruling of a long line of cases, one of which is *Blackman* v. *West Jersey and Seashore Railroad Co.,* 68 *N. J. L.* 1. Other cases are cited in the brief for the appellants, viz., *Huebner* v. *Erie Railroad Co.,* 69 *Id.* 327; 55 *Atl. Rep.* 273; *Yoshimi* v. *United States Express Co.,* 78 *N. J. L.* 281; 73 *Atl. Rep.* 45; *Safner* v. *Gollin,* 96 *N. J. L.* 431; 115 *Atl. Rep.* 348; *Thompson* v. *Giant Tiger Corp.,* 118 *N. J. L.* 10; 189 *Atl. Rep.* 649; *Drotar* v. *Pennsylvania Railroad Co.,* 120 *N. J. L.* 199; 199 *Atl. Rep.* 75.

An illustration of an admission made in the course of official duty is contained in the case of *Jones* v. *Mount Holly Water Co.,* 87 *N. J. L.* 106, where (at *p.* 108), it appears the company (of course by its agent) had written a letter to the State Board of Health about the condition of the water. See, also, *Wigm. Ev.,* § 1078, and 22 *C. J.* 390, § 465. In *Marmorstein* v. *State Theatres Corp.,* 6 *N. J. Mis. R.* 66; affirmed in 106 *N. J. L.* 574, the suit was for assault and battery and

false imprisonment, and the plaintiff was one of the spectators at a moving picture performance. He was arrested by employes and turned over by the manager to a policeman, and the manager said to the policeman, "take him out." This was conspicuously an utterance of the manager in the performance of his duties and illustrative of the distinction under discussion.

In the present case we are clearly of opinion that it was no part of the duty of the manager of the theatre to make statements to an injured party tending to show negligence of the defendant through its agent in failing to maintain the nosing strip in good order. This error, of course, requires a reversal, and this result makes it unnecessary to pursue to a conclusion the discussion of the question whether the alleged reproof of the manager directed to other employes was incompetent as evidence, particularly as the rule of *res gestæ* may perhaps be invoked, and to use the language of Professor Wigmore, *ubi supra,* "such problems naturally admit of much speculative and barren argument."

The judgment will therefore be reversed and the cause remanded for a new trial, costs to abide the event.