[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 513 
Defendant, Atlantic Casualty Insurance Company, has applied under Rule 3:60-2(3) for relief from a final judgment in favor of plaintiff entered on a jury verdict. The cited rule authorizes relief on motion when it is established that the final judgment is the product of "fraud (whether heretofore denominated intrinsic or extrinsic)" of an adverse party. The fraud charged here is the alleged perjured testimony of plaintiff's president which supplied the essential evidence to make out plaintiff's case.
Plaintiff is an automobile repair concern and sued for the amount of a repair bill for repairs to a taxicab damaged in a collision with an automobile of an assured of the insurance company. The defendants were the taxicab owner, the insurance company and one Leonard, a claim investigator for the insurance company. The verdict was against the insurance company only. Plaintiff discontinued the suit as against the taxicab owner, who testified on behalf of plaintiff at the trial. The jury returned a verdict of no cause for action in Leonard's favor in compliance with the court's instructions so to do if they found that he had ordered the repairs to be done for the account of the insurance company within the scope of an authority so to do as its agent.
Plaintiff sought to prove Leonard's agency and scope of authority by statements out of court imputed to Leonard in conversations with plaintiff's officers and the taxicab owner. These were to the effect that Leonard ordered the repairs and had said "My company will take care of the bill." These statements, standing alone, were not evidential either of *Page 514 
agency or scope of authority under the well settled rules that agency cannot be proved by declarations out of court imputed to the alleged agent and that such statements out of court are not to be deemed admissions binding on the principal except when by evidence other than the alleged agent's statements out of court they are proved to be within the scope of his agency or to have been authorized by his principal. Van Genderen v. PatersonWimsett Thrift Co., 128 N.J.L. 41 (E. A. 1941); Ashmorev. Pennsylvania Steam Towing Transportation Co., 38 N.J.L. 13
(Sup. Ct. 1875); and see also Van Allen v. Lobel,123 N.J.L. 273 (E. A. 1939); Arenson v. Skouras TheatresCorp., 131 N.J.L. 303 (E. A. 1943); Leonard v. StandardAero Corp., 95 N.J.L. 235 (E. A. 1920); Rafetto v. WarnerBros., 121 N.J.L. 333 (Sup. Ct. 1938); Safner v. Gollen,96 N.J.L. 431 (Sup. Ct. 1921); Yosbimi v. U.S. Express Co.,78 N.J.L. 281, (Sup. Ct. 1909); Huebner v. Erie R. Co.,69 N.J.L. 327 (E. A. 1903); Blackman v. West Jersey, etc., R.Co., 68 N.J.L. 1 (Sup. Ct. 1902).
However, plaintiff's proofs were not limited to the evidence of the out of court statements of Leonard but included the testimony of plaintiff's president that in the four months prior to the repair of the taxicab plaintiff had repaired 10 to 15 other vehicles on orders of Leonard and had been paid for such repairs by checks of the insurance company. He further testified that Leonard was the only employee of the insurance company with whom plaintiff dealt at any time and that in each of the 10 to 15 instances plaintiff's books "very possibly" recorded the repair job in the name of the owner of the vehicle but with a notation that the repair bill was to be charged to and paid by the insurance company.
Plaintiff's president testified in the morning of the second and last day of the trial. The summons and complaint issued February 27, 1947. The complaint alleged that the agreement for the taxicab repairs was made by Leonard for the account of the insurance company, and a bill of particulars, dated April 10, 1947, supplied the insurance company with information that the plaintiff claimed the agreement was oral *Page 515 
and had been made between Leonard and one Baker, an officer of plaintiff company. A pretrial conference was held February 10, 1949, and the case was tried March 30 and 31, 1949. The insurance company did not before the trial avail itself of the rules permitting discovery proceedings by deposition or interrogatories nor did it subpoena any officer of plaintiff to produce plaintiff's books at the trial. During the cross-examination of plaintiff's president late in the morning of March 31st the insurance company's attorney moved the court to direct the witness to obtain the books and bring them to the trial. This motion was denied when it appeared that no effort had been made to subpoena them and that it would take "probably three hours to get them," or after the time when the trial could be concluded.
The case was tried before the author of this opinion. The charge instructed the jury that they must determine the issues of Leonard's agency and scope of authority solely on the evidence as to the repairs of the 10 to 15 vehicles and without reference to the statements out of court as to the taxicab repairs imputed to Leonard and that such statements were binding on the insurance company as admissions only if the jury concluded from the testimony as to the 10 to 15 vehicles that Leonard had authority to order vehicles to be repaired and to obligate his employer to pay for the repairs. Compare Van Genderen v. Paterson WimsettThrift Co., supra.
The insurance company contends that the testimony of plaintiff's president as to the repairs to the 10 to 15 vehicles for its account and the payment of the bills therefor by its checks was willfully false and perjured, and that this perjury frustrated the success of its motion for an involuntary dismissal at the end of the plaintiff's case and of its motion for a directed verdict at the end of the whole case. It is clear that but for such testimony defendant would have prevailed on one of its motions because without that testimony, plaintiff's proofs were barren of legal evidence to support a verdict against the insurance company. Defendant's proofs were confined to the oral testimony of Leonard and its vice-president *Page 516 
and included a categorical denial by Leonard that he had ever ordered repairs to be done by plaintiff to any vehicle at any time including the taxicab and an equally emphatic denial by the vice-president that the insurance company ever issued its check to plaintiff in payment of any repair bill.
The insurance company applied to the court within a few days after the trial and verdict for a rule directing plaintiff to show cause why an order should not issue permitting the taking of depositions in support of an application under Rule 3:60-2(3) for relief against the judgment because of the alleged perjured testimony. The order sought was entered May 23, 1949, the depositions were completed October 11, 1949, and the matter was argued orally November 10, 1949.
There must first be considered whether perjury is such fraud as warrants the vacation of a judgment obtained by a party committing it. Wilson v. Anthony, 72 N.J. Eq. 836; affirmed,75 N.J. Eq. 299 (1908), is authority that there are circumstances in which perjured testimony alone "without other matters of equitable cognizance" is not a ground upon which a judgment may be set aside. A like rule obtains in a decided majority of American jurisdictions. See 31 Am. Jur.,"Judgments," §§ 662 and 737; 49 C.J.S., "Judgments," § 270; the principal cases are analyzed and discussed in valuable annotations found in L.R.A. 1916B, p. 890; 88 A.L.R. 390; to which should be added Hazel-Atlas Glass Co. v.Hartford-Empire Corporation, 322 U.S. 238, 88 L.Ed. 1250
(1944).
The rule is frequently couched in such broad language as to make it appear that the jurisdictions adopting it recognize no situation in which perjured testimony standing alone and unaccompanied by evidence of other frauds perpetrated outside of and independently of the trial is ground for relief against a judgment. See, for example, 31 Am. Jur., § 737. This is based on a suggested distinction between "intrinsic" and "extrinsic" fraud, perjury being in the former category and said not to be remediable on the ground relief for fraud is limited to "frauds extrinsic or collateral to the matter tried by the court" and is not available in the case of "fraud on *Page 517 
the matter on which the decree was rendered." U.S. v.Throckmorton, 98 U.S. 61, 25 L.Ed. 93 (1878). The reason for the distinction is given as a public policy against endless litigation of the same factual issues. "The mischief of retrying every case in which the judgment or decree is rendered on false testimony given by perjured witnesses would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases." U.S. v.Throckmorton, supra., L.Ed. at p. 96.
The Throckmorton case is recognized as the leading decision and source of the doctrine. Virtually every reported decision denying relief sought solely on the ground of perjured testimony quotes excerpts from Mr. Justice Miller's opinion, as doesWilson v. Anthony, supra, in our state. The situation in theThrockmorton case was a bill in chancery brought 20 years after the entry of a judgment to set aside the judgment for the alleged perjured testimony of a witness long dead when the bill was filed. Mr. Justice Miller's opinion must necessarily be read in light of that fact, but, in any event, that he did not intend to say relief is precluded in cases where timely application for relief is made, at least to the court whose judgment is involved before that court loses control of the case, seems evident from the care he took to distinguish the case before him from situations involving applications which "are parts of the same proceeding, relief is given in the same suit, and the party is not vexed by another suit for the same matter * * * these proceedings are all part of the same suit and the rule framed for the repose of society is not violated." L.Ed. p. 95.
Many of the decisions applying the rule seem to arise in independent actions, usually in courts of equity, instituted after the courts whose judgments are challenged had lost control of the actions and after long periods of time had elapsed. This is clearly true in Wilson v. Anthony, supra, for example, which was an original action brought in the former Court of Chancery to restrain execution of a judgment obtained in New Jersey on a judgment entered three years *Page 518 
earlier in a New York court, which latter judgment was attacked on the ground it was the product of perjured testimony.
Every court has inherent power, not dependent upon statute, to control, vacate or correct its own decrees in the interest of justice, at least so long as the cause remains under its control.Assets Development Co. v. Wall, 97 N.J.L. 468 (E. A.
1922); see also Stone v. Dugan Brothers, 1 N.J. Sup. 13 (App. Div. 1948); De Gruchy v. Wilscot Land Co.,110 N.J. Eq. 80 (Ch. 1932). In the Wall case the principle was stated by Chief Justice Gummere as follows (pp. 469-470):
"That the courts of this state, whose practice and procedure are in accordance with the rules and regulations of the common law, have power to open judgments upon good cause shown is settled beyond controversy. It was exercised by the Supreme Court as early as the year 1795, in the case of Miller v. Alexander,1 N.J.L. 400, and has continued to be exercised from that time to the present whenever it was properly invoked. And the courtmay exercise this power at any time while the cause remains underits control, provided the moving party embraces the first opportunity he has of presenting his case. Bell ads. Kelly, 17Id. 270. It is equally well settled that by the common law anapplication to open a judgment regularly entered is addressedwholly to the discretion of the court in which it was rendered,
and that, consequently, a writ of error (an appeal under our present practice) will not lie to review the determination of that court. Smith v. Livesey, 67 Id. 269." (Italics mine.)
Plainly, this does not exclude, but rather embraces, relief on application to the court from a judgment entered by it and procured by vital perjury whether or not accompanied by other acts of fraud. Certainly no good reason is apparent why perjury should be differentiated from any other fraud where the circumstances are such that through perjured testimony a party is enabled to defraud his adversary by preventing a real trial of the issue between them. A distinction based on a supposed difference between "intrinsic" and "extrinsic" fraud (so far as I can find, perjured testimony is the only example of "intrinsic" fraud recognized by the courts) is in reality without substance when the injured party appeals to the discretion of the court which entered the judgment. *Page 519 
The comment of the author of the note at 126 A.L.R. 393 is very appropriate. He says:
"But however emphatically a court may have laid down the absolute doctrine of nonrelief, there usually remains some lingering doubt as to what the court would do in such a case as may not have been in contemplation, and where the spectacle of the machinery of the law bearing down mercilessly, and perhaps ruinously, to collect and deliver over the fruits of undoubted fraud might be peculiarly odious.
"The supposed evil of interminable litigation to be averted by an absolute rule denying relief, vividly conceived and eloquently expressed in some of the cases, and most commonly in cases in which it is plain that under the facts relief would not have been granted in any jurisdiction, seems to find little confirmation in experience, and as concerns instances of vital perjury clearly established by newly discovered evidence, may be largely imaginary. It would seem that once clear proof of the perjury had been obtained, the guilty litigant would prefer absence or silence to repeated public investigations of his wrongdoing. Furthermore, where there is clear proof of perjury there is no clear proof of its absence, and so no ground upon which a second investigation of the perjury, or of the facts which were concealed by the perjury, may be predicated."
This is not to say that the court's discretion will be exercised favorably to a motion in every case. It is, of course, a wise and necessary policy which denies a right to relitigate matters which have once been fully litigated and it follows that each case must be carefully examined to determine whether the fact of falsity could have been discovered by the complaining party by the use of reasonable diligence. When the parties know of the existence of an issue to be resolved at the trial, each necessarily knows that his adversary will adduce proofs to support his contention and should be prepared to meet those proofs with his own. Where he has an opportunity to do this and does not avail himself of it, or, though availing himself of it, is unable to overcome the effect upon the jury of the evidence offered by his adversary, he should not, in effect, obtain a retrial of the issue by charging that the judgment against him was procured by perjury. Diligence in the preparation of his case is the obligation of every party and his attorney and when want of diligence appears, it may properly be argued against the exercise of judicial discretion *Page 520 
in his favor. See McClung v. Folks, 126 Va. 259,101 S.E. 345 (1919); Stewart v. Duncan, 40 Minn. 410, 42 N.W. 89
(1889); Grant Inventions Co. v. Grant Oil Burner Corp.,109 N.J. Eq. 281 (Ch. 1931). It has been expressly held that relief should be denied where the party committing the perjury does not, other than by the mere utterance thereof, conceal from the other party the means by which the falsity of the evidence might be discovered, or otherwise mislead the latter, so as to prevent him from contesting the false testimony. Fealey v.Fealey, 104 Cal. 354, 38 P. 49 (1894); 31 Am. Jur.,"Judgments," § 668.
Rule 3:60-2(3) explicitly authorizes this court to grant relief against "intrinsic" fraud when the motion is made within a reasonable time but, in any event, not more than one year after the judgment is entered. Of course, every intendment is in favor of the validity of the rule and an inferior court should make every effort to discern a meaning of it which makes the rule valid. Audiffren Refrigerating Mach. Co. v. General ElectricCo., 245 Fed. 783 (D.C.N.J. 1917). I interpret the rule as declaratory of the principle as respects the right to relief against a judgment produced by vital perjury which I think is implicit in the decision of Assets Development Co. v. Wall,supra. I do not construe Wilson v. Anthony, supra, as establishing in New Jersey the absolute doctrine of non-relief. See Kearns v. Kearns, 70 N.J. Eq. 483, at 488 (Ch. 1905). If the rule were not so interpreted a question of its validity would arise as to whether it offends the established canon that a rule of procedure may not abrogate substantive common law principles. Veith v. Horn, 5 N.J. Super. 622, 68 A.2d 782
(Law Div. 1949); and cases cited therein.
I thus conclude that both on principle and on the explicit authority of Rule 3:60-2(3) this court may grant relief against a judgment which is proved to be the product of willful perjury.
I now turn to the facts before me on this motion. The motion is necessarily addressed to the court's discretion, which discretion is not an arbitrary but a legal discretion, to discern *Page 521 
and follow the course presented by the law. State v. Hunter,4 N.J. Super. 531 (App. Div. 1949).
Defendant's burden on this motion is to show by clear, convincing and satisfactory evidence, not simply that the testimony of plaintiff's president was false, but (1) that it was willfully and purposely falsely given, (2) that it was material to the issue being tried, and was not merely cumulative but probably controlled the result, and (3) that the fact of its falsity could not have been discovered by reasonable diligence in time to offset it at the trial or that for other good reason the failure to use diligence is under all the circumstances not a bar to relief. Koop v. Acken, 90 Neb. 77, 132 N.W. 721 (1911);McDougal v. Walling, 21 Wn. 478, 58 P. 669 (1899).
Element (2) is obviously established. The challenged evidence controlled the result because without that evidence the case could not have been submitted to the jury.
Defendant has not sustained its burden, however, as to elements (1) and (3). The gist of its case to show willful perjury is that the records finally produced on his deposition by plaintiff's president did not contain any entries showing that 10 to 15 vehicles were repaired for defendant's account and that its own records disclose only one draft issued to the plaintiff, such draft being for $21 for seven inspections at $3 each made by plaintiff at the insurance company's request to determine the extent of damage actually incurred by claimants against its assureds.
There is no question that neither such records as the witness finally produced nor the insurance company records support his testimony at the trial; on the contrary, they tend to show its falsity. However, any inference that the testimony was willfully false and corrupt is negatived by his statements both at the trial and in his deposition that record keeping was Baker's job and that he understood the 10 to 15 vehicles were being repaired for the account of the insurance company because Baker told him so. "If he swore honestly to a fact or belief, with probable cause, according to his own lights, to the best of his belief, he is not guilty of perjury, though his *Page 522 
oath were really untrue * * * if there be no evil intent, general or special, perjury fails; thus it is not perjury to swear honestly to testimony which the witness believes to be true, though a little diligence would have enabled him to have discovered its falsity." Wharton's Criminal Law, §§ 1513 and 1516, Vol. II, 12th Edition (1932).
Plaintiff's president testified at the trial that the books kept by Baker were "very, very vague" and "pretty hard to understand" and that it had been necessary several months after the taxicab had been repaired to have a new system installed by an accountant but that it was "possible" he could find the old records and locate the references to the 10 to 15 repair jobs and that "very possibly" those records would show "for whom the jobs were done" and that he "believed he could" ascertain from the records and books the names and addresses of the owners of the vehicles which were repaired. When his deposition was taken on this motion he produced what he said were "everything I could find pertaining to this case" but that "they were not complete," "they were all kept by Mr. Baker," that as to checks he had no personal knowledge, that "whatever was received was received by Mr. Baker, he opened all the mail, he took care of all checks, some I saw, some I didn't," "I didn't keep records," "I wasn't too familiar with the way the records were kept," "I made a thorough search." The testimony as to the 10 to 15 vehicles "was of my own knowledge, what I believed was done, as best I could recollect," the record "was kept by Mr. Baker and I found out that there had been lots of transactions that I can find no record of," that even the $21 draft of the insurance company for the seven inspections was not entered in the records he had, that when he testified at the trial that he could find records showing entries as to the 10 to 15 vehicles "I really believed at that time that I could," that he knew the 10 to 15 vehicles were jobs for the insurance company because "Mr. Baker said this was sent in by Mr. Leonard, this job" and that is why "I believed they were sent by Atlantic Casualty."
Two of the inspected jobs were actually repaired by plaintiff but, as to one, the proofs do not show whether the repair *Page 523 
bill was paid by the insurance company or by any one else, and the other, a $150 bill, was paid but the insurance company issued its draft for $100 in settlement of that claim directly to the claimant and the draft does not show that the claimant endorsed it over to the plaintiff. The inference is that the plaintiff's bill was paid by the claimant with his own funds.
The witness had testified at the trial that the corporation was made up of himself and Mr. and Mrs. Theodore Baker, that he was the mechanic who did the repair work and that Mr. Baker handled all the books and was the business getter. He said that Baker had made the arrangement with Leonard for handling the insurance company's work, that he met Leonard through Baker, and that Leonard appeared at the repair shop very frequently. Leonard admitted during his testimony at the trial that he was there at least once a week or once every other week in the three month interval prior to the repair of the taxicab but said that this was because he used the place as a stopover between appointments and that he was not there in connection with any repair jobs. Leonard further admitted that his own car was repaired without charge by plaintiff but gave no explanation of the reason for this gratuity. Leonard also denied at the trial that he carried his employer's draft books to enable him to make spot settlements of claims; but in his deposition taken after the trial he testified that he did carry such books but actually issued drafts only after first obtaining his superior's approval to make a settlement he recommended.
Every trial judge apprehends the personal humiliation that a witness before him may pervert the cause of justice by deliberate perjury and escape detection. The insurance company, however, has not in my judgment established more than that neither plaintiff's records nor those of the company confirm the testimony as to the repairs of the 10 to 15 vehicles. The insurance company has wholly failed to show that in testifying as he did plaintiff's president was uttering willful falsities. On the contrary, his testimony on his deposition confirms the impression I had at the trial that he was telling *Page 524 
the truth as he saw it. Baker's statements to him, coupled with Leonard's frequent appearances at the repair shop, are sufficient basis to explain his belief in the truth of the matters to which he testified.
Baker did not testify at the trial because he disappeared in the fall of 1948 after some matrimonial difficulties. His testimony would undoubtedly have clarified the issue. The insurance company knew as early as April, 1947, that plaintiff's case was grounded on an oral agreement between Baker and Leonard, it made no effort by depositions or interrogatories even after the effective date of the new rules in September, 1948, to elicit the basis of the claim. And, as has been mentioned, the insurance company likewise made no effort to subpoena plaintiff's books at the trial. Under the circumstances the company may not now fairly complain of a result which in large part flows from its own lack of diligence.
The motion for relief from the judgment is denied and the order to show cause is discharged and the restraints therein dissolved.