8 N.J. Super. 238 (1950)
73 A.2d 848
BALIP AUTOMOTIVE REPAIRS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN SCHROEDER AND WILLIAM LEONARD, DEFENDANTS, AND ATLANTIC CASUALTY INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 15, 1950.
Decided June 12, 1950.
*239 Before Judges McGEEHAN, COLIE and EASTWOOD.
Mr. Aaron Gordon argued the cause for the plaintiff-respondent (Mr. Louis Steisel, attorney).
Mr. Harry Green, attorney for defendant-appellant, argued the cause.
The opinion of the court was delivered by EASTWOOD, J.A.D.
Defendant, Atlantic Casualty Insurance Company (hereinafter referred to as the insurance company), *240 appeals from an order of the Superior Court, Law Division, denying its application under R. 3:60-2 (3) for relief from the judgment entered against it and for a new trial. Defendant also appeals from the judgment returned against it on the ground of alleged trial errors and that the judgment is against the weight of the evidence. We think it necessary to discuss and decide only the appeal from the order denying a new trial.
Plaintiff instituted its action against defendants, John Schroeder, William Leonard and the insurance company, to recover the cost of repairs made by plaintiff to an automobile owned by the defendant, John Schroeder, which repairs plaintiff alleged the defendant insurance company, acting through its agent and employee, William Leonard, had authorized and agreed to pay for. Subsequently, the action was discontinued as to defendant Schroeder and at the trial he testified for plaintiff. The jury returned a verdict of no cause of action in favor of defendant, William Leonard, and a verdict in the sum of $934.49 against the defendant insurance company. Judgment was entered April 4, 1949.
On April 8, 1949, the insurance company sought an order directing plaintiff to show cause why it should not have relief from the judgment and a new trial on the ground of fraud, misrepresentation and other misconduct on the part of the plaintiff under Rule 3:60-2 (3) and mistake, inadvertence, surprise and excusable neglect on the part of the insurance company under Rule 3:60-2 (1). Under authority of the order granted by the court, depositions were taken and books and records were examined. At the trial, plaintiff's president, John Lipnicki, testified that the plaintiff company had repaired 10 to 15 automobiles for the defendant insurance company between July and September, 1946, at Leonard's request, and that the defendant company had paid for each by check. The defendant, at the time, requested the court to direct plaintiff's president to produce his company records to substantiate this testimony. The witness stated he could not produce the records in less than three hours' *241 time, and it appearing that the trial would be concluded within a comparatively short time thereafter, and without further objection by the insurance company, the trial proceeded without the introduction of the records into evidence. The depositions disclosed that plaintiff's records showed no reference to the alleged repair jobs and that the sole payment made by it to plaintiff was a single draft in the amount of $21 representing payment for seven inspections of damaged automobiles made by plaintiff. The testimony given by Lipnicki at the time of the taking of the depositions corroborated the testimony of the insurance company's witnesses at the trial, viz.: that it had never paid plaintiff for any repair work, but only the sum of $21 for the seven inspections. At the trial, Lipnicki insisted that the alleged prior repair work done by his company for the insurance company at the direction of the insurance company's employee, Leonard, was within his own knowledge, whereas when the depositions were taken, he admitted his testimony at the trial was not based upon his personal knowledge of the challenged evidence, but upon information given to him by his accountant, Baker, who before the trial, had left for parts unknown and was not available as a witness. In fact, at the taking of the depositions, Lipnicki admitted that his prior testimony regarding the aforesaid repairs and his company's records respecting same was "wrong."
The trial court, in reviewing the depositions, and considering the arguments of counsel, stated, inter alia:
"The case was tried before the author of this opinion. The charge instructed the jury that they must determine the issues of Leonard's agency and scope of authority solely on the evidence as to the repairs of the 10 to 15 vehicles and without reference to the statements out of court as to the taxicab repairs imputed to Leonard and that such statements were binding on the insurance company as admissions only if the jury concluded from the testimony as to the 10 to 15 vehicles that Leonard had authority to order vehicles to be repaired and to obligate his employer to pay for the repairs. Compare Van Genderen v. Paterson Wimsett Thrift Co., supra."

* * * * * * * *
*242 "* * * It is clear that but for such testimony defendant would have prevailed on one of its motions because without that testimony, plaintiff's proofs were barren of legal evidence to support a verdict against the insurance company. * * *"

* * * * * * * *
"Defendant's burden on this motion is to show by clear, convincing and satisfactory evidence, not simply that the testimony of plaintiff's president was false, but (1) that it was wilfully and purposely falsely given, (2) that it was material to the issue being tried, and was not merely cumulative but probably controlled the result, and (3) that the fact of its falsity could not have been discovered by reasonable diligence in time to offset it at the trial or that for other good reason the failure to use diligence is under all the circumstances not a bar to relief. Koop v. Acken, 90 Neb. 77, 132 N.W. 721 (1911); McDougal v. Walling, 21 Wash. 478, 58 P. 699 (1899).
"Element (2) is obviously established. The challenged evidence controlled the result because without that evidence the case could not have been submitted to the jury.
"Defendant has not sustained its burden, however, as to elements (1) and (3). * * *"

* * * * * * * *
"There is no question that neither such records as the witness finally produced nor the insurance company records support his testimony at the trial; on the contrary, they tend to show its falsity. * * *"
The trial court stated that the case of U.S. v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93 (1878), is recognized as the leading decision and source of the doctrine that:
"* * * `The mischief of re-trying every case in which the judgment or decree is rendered on false testimony given by perjured witnesses would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases.'"
However, the case of Publicker v. Shallcross, U.S. Circuit Court of Appeals, Third Circuit, 106 F.2d 949, 126 A.L.R. 386, 390, October 6, 1939, cert. denied by United States Supreme Court, 84 L.Ed. 521, in discussing this principle, held that the later decision of Marshall v. Holmes, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870, is in conflict with the holding of U.S. v. Throckmorton, supra, stating:
*243 "* * * `Since the courts are at liberty to cite either line of authorities, and do so as suits their convenience, the only possible answer in spite of repeated assertions that the federal rule is clear, is that there is no federal rule at all. And there will be none until one or the other of the conflicting decisions is overruled.'
"21 Columbia Law Review 268, 269, 270.
"In our judgment, and if the case arises, the harsh rule of United States v. Throckmorton, above cited, will be modified in accordance with the more salutary doctrine of Marshall v. Holmes, above cited. We believe truth is more important than the trouble it takes to get it."
It will be noted that the trial court held that the insurance company did not sustain its burden of establishing that (1) the testimony of plaintiff's president was wilfully and purposely falsely given and (3) that the fact of its falsity could not have been discovered by reasonable diligence in time to offset it at the trial or that for other good reason the failure to use diligence is under all the circumstances not a bar to relief. Our review of the record convinces us that the testimony in question may be characterized as wilfully and purposely false. A recitation of the following pertinent portions of Lipnicki's testimony reveals that he insisted that his testimony concerning the 10 to 15 repair jobs was within his personal knowledge:
"Q. Do you know anything personally of the circumstances under which that first job came to you for repair? A. Yes, sir."

* * * * * * * *
"Q. How about the second job that came in? Do you remember when the second one came in? A. Well, not offhand; I mean as far as distinguishing one job from the other, that is very hard. I know we had quite a few of his jobs which we repaired.
"Mr. Klausner: I move the part `his jobs' be stricken.
"The Court: Denied.
"Q. What was the procedure that was followed at your place as to jobs that were done with which Mr. Leonard was connected? Do you know? In other words, what I want you to tell us is how did the job get to your place and what connection did Mr. Leonard have with each job as it came in? A. Mr. Leonard would call up Mr. Baker and say 
"Mr. Klausner: Just a moment.
"Q. Do you know that of your own knowledge? A. Yes, sir."

* * * * * * * *
*244 "Q. On the books as to each job do you carry a charge against someone for the work done? A. Yes, sir.
"Q. On these jobs identified with Mr. Leonard, not only the Schroeder job but the others, how was the charge carried? A. It was carried in the name of the man who owned the car and it was charged to the Atlantic Casualty Company.
"Q. In each instance charged to the Atlantic Casualty? A. Yes, sir.
"Q. How were the bills paid, do you know, by the Atlantic Casualty? A. They were paid by check.
"Q. Was it the check of the Atlantic Casualty? A. Yes."

* * * * * * * *
"Q. When you stated that other jobs were done for the Atlantic Casualty Insurance Company, when were they done, to the best of your recollection? A. Between July of 1946 and September of 1946.
"Q. How many? A. Approximately 10 or 15 jobs, sir.
"Q. Were they inspections or repairs? A. They were repairs. There were other inspections which I am not considering. Mr. Baker went out on inspection jobs with Mr. Leonard. Some of the jobs we got and some we didn't.
"Q. So that the 10 or 15 jobs weren't inspection jobs but were repair jobs? A. Yes, sir.
"Q. Is that right? A. That's right, sir."

* * * * * * * *
"Q. When you say that you were paid by check of the Atlantic Casualty Insurance Company, were you paid by a check or by a draft of that company? A. Check, sir.
"Q. You are positive of that? A. Yes, sir.
"Q. What color was that check? A. I believe it was yellow. I am not sure, sir. It is two and a half years ago."
Lipnicki had access to his company's records, as they were in his custody. Consequently, he had every opportunity to ascertain the true facts prior to taking the stand and his testimony of the specific facts was, therefore, susceptible of exact knowledge. Such testimony has been held to be wilfull and fraudulent. Mr. Justice Depue, speaking for the Supreme Court in Cowley v. Smyth, 46 N.J.L. 380, 388 (1884), stated:
"In other cases of actionable frauds, the probative force and effect of the evidence to establish the fraudulent intent will depend upon the circumstances of the particular case. This question is presented in a complex form where the defendant has added to a representation  which turns out to be untrue, but was not false to his knowledge  an affirmation that he made the representation as of his own knowledge. In such cases the force and effect of the evidence will *245 depend, in a great measure, upon the nature of the subject concerning which the representation was made. If it be with respect to a specific fact or facts susceptible of exact knowledge, and the subject matter be such as that the affirmation of knowledge is to be taken in its strict sense, and not merely as a strong expression of belief, the falsehood in such a representation lies in the defendant's affirmation that he had the requisite knowledge to vouch for the truth of his assertions, and that being untrue, the falsehood would be wilful and therefore fraudulent. * * *"
A discussion of this question in 22 Harvard Law Review 600 is pertinent and interesting. It was there stated:
"* * * It is to be noted, however, that before relief is granted on the ground of perjury, it is required that the plaintiff have a meritorious defense and that he clearly establish the perjury. Consequences are not always conclusive against a rule of positive law; and here the equity of the case is clear.
"It is said that the refusal to enjoin the enforcement of judgments on the ground of perjury is a necessary choice between the evils of injustice in individual cases and the encouragement of vexatious litigation. But a party seeking redress is required to exhaust first his legal remedies, to be free from fault, and clearly to establish the perjury without which judgment would not have gone against him. It is submitted that with these safeguards against undue litigation the lesser evil is to follow the equity of the matter."
We are convinced that the insurance company has a meritorious defense and has established the wilfully false testimony of Lipnicki.
With reference to the question of defendant's diligence, we do not perceive that defendant could have anticipated that plaintiff would offer and rely upon the testimony of Lipnicki as to prior unrelated repair jobs for the purpose of establishing the relationship of principal and agent between the defendant company and its employee, Leonard. At the trial, defendant objected to the testimony, made an effort to require plaintiff to produce its records and informed the court that it was taken by surprise at the production of such testimony. Within approximately four days after the judgment was entered, defendant made an application for a rule to show cause why a new trial should not be granted, based upon the alleged false testimony of Lipnicki. The depositions were taken under the rule and the matter was proceeded with to a *246 finality without undue delay. It is difficult to see how defendant could have been more diligent in the action taken by it after it acquired knowledge of the falsity of Lipnicki's testimony. It must be borne in mind that all of the pleadings in this action were filed between April 21, 1947, and October 14, 1947, so that the action was at issue approximately one year before the inauguration of our present judicial system. In view of the liberal provisions of R. 3:26-1 et seq., for the discovery of such evidence in advance of trial, we are of the opinion that, if the issue had been joined between the parties after September 15, 1948, the insurance company's application would necessarily fail on the ground of lack of diligence.
It has been the rule for many years, that it is within the discretion of the trial court to grant a new trial on the basis of revelation of wilfully false testimony substantially affecting the result. The historic power of courts to open their judgments has not been confined to instances of fraud, but extends to cases of mistake, inadvertence or "like just cause." The power to open judgments upon good cause shown continues while the cause remains under the court's control. Stone v. Dugan Brothers of N.J., 1 N.J. Super. 13, 16 (App. Div. 1948). Cf. State v. Hunter, 4 N.J. Super. 531, 537 (App. Div. 1949).
We are convinced, as was the trial court, that, if it had not been for the questioned testimony given by Lipnicki, the defendant would have been entitled to a dismissal of plaintiff's action. Therefore, it being established by defendant under the depositions that Lipnicki's testimony was false  and, in our opinion, wilfully and purposely so  the ends of justice require that a new trial be directed under the authority of R. 3:60-2 (3). Certainly, where the only basis that supports the judgment is the false testimony of one witness, without which the action would have failed, it is manifestly unjust to permit the plaintiff to gather the fruits arising out of such wilfully false testimony.
The judgment of the Law Division is reversed.