60 N.J. Super. 436 (1960)
159 A.2d 433
JACK GREENFIELD, PLAINTIFF-RESPONDENT,
v.
ROBERT DUSSEAULT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 22, 1960.
Decided March 24, 1960.
*438 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. John J. O'Donnell argued the cause for defendant-appellant (Messrs. Egan, O'Donnell & Hanley, attorneys).
Mr. Jacob Siegal argued the cause for plaintiff-respondent (Mr. Sam Weiss, of counsel).
The opinion of the court was delivered by FREUND, J.A.D.
This is an automobile collision case, tried in the Law Division without a jury, in which each of the parties charged the other, at various points in the pleadings, with either sole or contributory negligence. The trial judge found in favor of the plaintiff Jack Greenfield, and proceeded to enter judgment on the complaint against the defendant Robert Dusseault in the sum of $2,758, and to dismiss his counterclaim. Defendant appeals, principally contending that the weight of the evidence established plaintiff's *439 contributory negligence and that recovery is barred on that ground as a matter of law.
At about 4:00 P.M. on December 27, 1957 plaintiff was driving in a westerly direction on Route 46 in Caldwell. This is a four-lane highway, divided by a 12-foot wide center island, which in turn is broken by openings at various points to permit turning around. The two westbound lanes have a combined width of 20 feet. Plaintiff was driving his children home from an ice skating rink, but was first "looking for a place that made fireplace materials." He stopped for directions at a gasoline station, which was on the north side of Route 46, and left his car on the shoulder of the highway, facing westward. Plaintiff was told he had to turn his car around and proceed in an easterly direction on the highway. There was an opening in the center island about 10 feet to the west of the gasoline station; to reach it, plaintiff was required to drive in a southwesterly direction across the westbound lanes. He turned the car in this direction, on the shoulder at a 45-degree angle to the highway, and waited with the motor running until the traffic cleared.
Plaintiff made observation of the roadway by looking out the window, over his left shoulder. The traffic was "rather heavy" and plaintiff was "looking to make sure" whether he could "get out safely or not." He waited "about two or three minutes" and "didn't move until * * * there was an empty space." Plaintiff saw a car coming, but it was "two to three blocks away" and "didn't seem to be going fast." Plaintiff estimated it was about 150 yards away. He put on his directional signal and pulled into the highway at about 10 to 15 miles per hour. When the car had traveled about 25 feet across the westbound lanes and partly into the cut in the island, the left rear was struck by the left front of the defendant's car. The impact caused plaintiff to be thrown out of his car and into the opening.
Defendant had also been at the skating rink, taking photographs for a newspaper of a local "Girl of the Month" *440 whom he was driving home. He was proceeding westerly in the left, passing lane of Route 46, allegedly at a speed no greater than 45 miles per hour. Immediately prior to the impact, there were no cars on his right. He claimed to have seen plaintiff's car standing on the shoulder when he was 200 yards away. Defendant testified that when he was but two or three car-lengths away, plaintiff's car "pulled in front," requiring him to slam on his brakes and swerve to the right; but a version of the accident predicated on a sudden movement of plaintiff's car when defendant was only a few yards away was rejected by the fact-finder, and we do not consider it further.
A police officer testified that he took a statement from the defendant at the scene, in which the defendant said he had been blinded by the sun and had not seen plaintiff's car pulling out of the station. Defendant denied having given the latter portion of this statement. The officer said he had observed debris resulting from the collision in the middle of the westbound lanes.
At the conclusion of the proofs, the trial judge said he was satisfied that plaintiff had made careful observations while in a standing position, had used his directional signal to indicate an intention to turn, and had moved onto the road at an opportune time. He found that the front of plaintiff's car had entered the cut in the island at the time of the collision.
On the issue of primary negligence, the court was justified in finding against the defendant on the evidence presented. Defendant admitted he had been blinded by the sun and had been driving in a lane ordinarily reserved for passing. His high speed can be inferred from the force with which he smashed into the rear of plaintiff's car. The police officer testified he found plaintiff's car "over on the shoulder of the eastbound lane," which meant that it had been jolted through the 12-foot center island opening and across and free of the two eastbound lanes  a trajection of *441 "approximately 40, 45 feet." Although the impact was a severe one and defendant said he had applied his brakes before the collision, his car could not be stopped until it was "50 to 100 feet" past the point of impact. Moreover, defendant's youthful passenger was not brought forward to corroborate his explanation that the accident had been caused by plaintiff's "shooting out of the shoulder." There was ample proof of defendant's failure to act reasonably after he had, from an admitted distance of 200 yards, full view of plaintiff's car.
But defendant contends that plaintiff's own testimony conclusively establishes that he did not operate his vehicle in accordance with the degree of care imposed upon him under the circumstances. It is urged that plaintiff was contributorily negligent in failing to make an effective observation of the approaching car, and that logic fairly compels a finding that plaintiff did not yield the right of way to traffic approaching on the highway and did not seek an opportune time to make the left or U-turn.
In general terms, the operator of a motor vehicle must exercise such reasonable care and caution for his own safety as an ordinarily prudent man would exercise under like circumstances. He must exercise such amount of care as is commensurate with the risk of harm involved. Ambrose v. Cyphers, 29 N.J. 138, 144 (1959). More specifically, a person seeking to make a U-turn or a left turn across the path of other traffic has the duty to await an opportune moment and to exercise an amount of care in proportion to the increased danger involved in the turn. Id., at page 150. He is required to yield the right of way to such other users of the roadway as can reasonably be expected to come into proximity to the space he must occupy in the course of the maneuver. See N.J.S.A. 39:4-66.1. See also N.J.S.A. 39:4-126. Movement into a traffic lane from the shoulder of a rural highway may require the exercise of a greater amount of care than a similar movement from the curb of a city street since the speed of approaching vehicles *442 is ordinarily greater upon the open highway. Annotation, 29 A.L.R.2d 107, 128 (1953).
The mere fact, however, that a person drove from the shoulder onto the highway and collided with a passing vehicle has been held not to require a finding of negligence or contributory negligence, where there is evidence indicating the exercise of proper care. Id., at page 131; 5A Am. Jur., Automobiles and Highway Traffic, §§ 722, 723 (1956). Cf. Baca v. Public Service Co-ordinated Transport, 128 N.J.L. 8 (E. & A. 1942); LeBavin v. Suburban Gas Co., 134 N.J.L. 10 (E. & A. 1946); Goldsboro v. Central R. Co., 60 N.J.L. 49 (Sup. Ct. 1897).
There are several cases in our jurisdiction holding that the assessment of the kind of conduct engaged in by plaintiff in the present case is peculiarly for the trier of the facts. In Baxter v. Public Service Transportation Co., 6 N.J. Misc. 1099, 143 A. 748 (Sup. Ct. 1928), a youthful woman driver made a U-turn in the face of two approaching vehicles. The operator of one managed to pass her on the right, but the other vehicle, a bus, collided with her. A finding against the bus driver and in favor of the owner of the car which the woman was driving was affirmed, the court ruling that it was for the jury to decide the issues of negligence and contributory negligence. A like result was reached in Moran v. Boogher, 8 N.J. Misc. 50, 148 A. 181 (Sup. Ct. 1930), where plaintiff had crossed in front of defendant at a distance of but 150 feet. In Padula v. Public Service Co-ordinated Transport, 11 N.J. Misc. 69, 165 A. 123 (Sup. Ct. 1933), plaintiff had pulled out from a parking place into the traffic pattern of a busy city thoroughfare, and his verdict survived an appeal on the ground defendant advances in the instant case. In Ambrose v. Cyphers, supra, the argument was even made, albeit unsuccessfully, that one making a U-turn was free from responsibility for a resultant collision as a matter of law; the conduct of the driver in failing to make the necessary observations was held properly submitted to the jury. 29 N.J., at pages 151-152. And in Liberatori *443 v. Yellow Cab Co. of Philadelphia, 35 N.J. Super. 470 (App. Div. 1955), although we reversed a judgment in favor of one who had backed out of a driveway onto the edge of a highway, there was no suggestion of his contributory negligence as a matter of law or of negligence per se in violating those provisions of our motor vehicle law cited above.
We have no doubt that plaintiff, having observed the defendant's car 450 feet or three blocks away, left himself a rather narrow margin to allow, from a standing position, an uneventful traversal of the westbound lanes and safe entry into the island opening. But in consonance with the cases just discussed, and in application of the principle that the assessment of conduct is ordinarily a factual determination to be left undisturbed except in the clearest case of contributory fault, Taneian v. Meghrigian, 15 N.J. 267, 283 (1954), we are not prepared to reverse the fact-finder's conclusion that plaintiff, having waited two or three minutes until the traffic had sufficiently cleared and having made deliberate effort to avoid the kind of mishap which occurred, was not contributorily negligent.
We do not think that the circumstance that this case was tried by a judge sitting without a jury requires a contrary conclusion. Cf. Cresse v. Nuneville, 4 N.J. 128, 129 (1950). If it is true that a jury verdict for plaintiff, on the same proofs, would be invulnerable on appeal  and this on the reasoning that plaintiff was not contributorily negligent as a matter of law  there is all the more reason for respecting the conclusion of the trial judge, who is no less experienced than a jury in analyzing proofs and is presumably free from partiality, prejudice or passion. In the final analysis, plaintiff was either contributorily negligent or he was not; whether the assessment of his conduct involves a question of fact or of law, or, more accurately, an evaluation of facts in terms of their legal consequences, the judgment of this court on the substantive issue should not be made to depend upon the mode of trial in the lower tribunal. Otherwise, we fail to lay down a predictable rule for future cases. Beyond that, *444 by casting our function to determine whether there was or was not contributory negligence in terms of deciding upon a "matter of fact," we make it "difficult to ascertain what is the precise nature of the principle involved in this phrasing." 9 Wigmore, Evidence (3d ed. 1940), § 2552(d), pp. 518-19.
It is true that the rules of court permit a greater scope of appellate review in a non-jury case and that we may make new or amended findings of fact in such cases. Compare R.R. 1:5-3(a) with R.R. 1:5-4(b). And where the subordinate facts are not in dispute and credibility is not involved, the findings of the court below are not as weighty as they would otherwise be. 3 Am. Jur., Appeal and Error, §§ 902, 905 (1936); 5A C.J.S. Appeal & Error § 1656(8) (1958). But we are convinced that it was not the purpose of R.R. 1:5-4(b) to leave the trial judge in a negligence case as a mere receiver of impressions of credibility, functioning simply to frame a record upon which the appellate court pronounces judgment. We are here to decide whether plaintiff's conduct was contributorily negligent as a matter of law. If it was not, the issue raised a question of "fact" for resolution by the trial judge, Sevack v. Pennsylvania R. Co., 5 N.J. Super. 324, 325, 326 (App. Div. 1949), and his judgment on facts which, by hypothesis in this case, are not such as remove the matter from the realm of reasonable debate, should be sustained even though we might have come to a different conclusion. His findings should not be disturbed unless they are so wholly unsupportable as to result in a denial of justice, and we should exercise our original fact-finding jurisdiction sparingly and in none but a clear case where there is no doubt about the matter. McGowan v. Peter Doelger Brewing Co., 10 N.J. Super. 276, 281-282 (App. Div. 1950); Julius Reiner Corp. v. Sutton, 23 N.J. Super. 93, 96-97 (App. Div. 1952). We do not consider plaintiff's conduct so indisputably negligent as to make the present case a proper one for the exercise of our power so to determine by "finding the facts" anew.
*445 Other points raised in the defendant's brief are without merit.
The judgment is affirmed.
CONFORD, J.A.D. (dissenting).
The basis for my disagreement with the conclusion of my colleagues is in the circumstance that this case was tried by a judge sitting without a jury. The rules of court and the interpretative cases justify drawing a significant distinction in the scope of appellate review between such a case and one wherein the issues of fact are decided by a jury. In the former, "new or amended findings of fact may be made but due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." R.R. 1:5-4 (emphasis added). A jury verdict, by contrast, shall only "be set aside as against the weight of the evidence if, having given due regard to the opportunity of the trial court and the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion." R.R. 1:5-3 (emphasis added).
As was stated in Capone v. Norton, 11 N.J. Super. 189, 193 (App. Div. 1951), affirmed 8 N.J. 54 (1951):
"The finding of a fact by the trial judge, when reviewed pursuant to Rules 1:2-20 and 4:2-6 [the pertinent provisions of which are now contained in revised rules R.R. 1:5-3, 1:5-4 and 2:5], has not as great force as a jury's verdict. The Rules remind us that `due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.' Beyond that, every intendment is in favor of the judgment under review, and we should not disturb the court's finding of fact unless we are well satisfied that the finding is a mistaken one. McGowan v. Peter Doelger Brewing Co., 10 N.J. Super. 276 (App. Div., Nov. 1950). But respect for the trial court imposes no restraint on our power fully to analyze the proofs and thereby arrive at a conclusion whether the finding is consistent with the evidence. Lehmann v. Lehmann, 7 N.J. Super. 232 (App. Div. 1950)."
And see Borough of Park Ridge v. Salimone, 21 N.J. 28, 39 (1956), stressing that the only limitation upon the power of the Appellate Division or the Supreme Court to make *446 new or amended findings of fact in a case not determined by the verdict of a jury is that due regard must be given to the opportunity of the trial court to judge of the credibility of the witnesses before it. See also Midler v. Heinowitz, 10 N.J. 123, 128, 129, 131 (1952); Gosschalk v. Gosschalk, 48 N.J. Super. 566, 579 (App. Div. 1958), affirmed 28 N.J. 73 (1958); Gregory Manor v. City of Clifton, 53 N.J. Super. 482, 492 (App. Div. 1959); Coles v. Osback, 22 N.J. Super. 358, 367 (App. Div. 1952); De Baro v. Gabryelski, 14 N.J. Super. 50, 53 (App. Div. 1951).
It may well be that a jury verdict in favor of the plaintiff on the factual record in the instant case would not be properly subject to appellate disturbance based upon the showing from the facts here presented of plaintiff's contributory negligence. A determination by a reviewing court of plaintiff's contributory negligence as a matter of law where the case is being tried before a jury requires it to be shown "clearly and conclusively as a fact or as a necessary and exclusive inference that would be drawn by all reasonable men in the exercise of a fair and impartial judgment." DeRienzo v. Morristown Airport Corp., 28 N.J. 231, 240, 241 (1958). But in the instant case, which was not tried before a jury, the question is not whether the record establishes plaintiff's contributory negligence so conclusively as to render it a matter of law for the court, but, rather, whether the determination of fact by the trial judge is not so plainly mistaken in that regard as to warrant in the interests of justice the invocation of our power to make a new finding of fact and thereby give effect to our conviction that, entirely consistently with the accordance of full respect to the trial judge's impression of the credibility of the witnesses, plaintiff's own negligence contributed proximately to the accident and his consequent damages. My position is in the affirmative on the proposition last stated.
I make no question as to the resolution by the trial judge of the negligence of the defendant. Whether it was because *447 of the evidence that the sun was in his eyes, or for other reasons, it was reasonable for the court to conclude that his negligence contributed to the accident. But, as needs no reiteration, this jurisdiction does not recognize the doctrines of comparative negligence or last clear chance. If plaintiff's own negligence played a causal role in the collision he is absolutely barred. I assume, and so may defendants in automobile accident cases, that the unqualified retention of the doctrine of contributory negligence in our law is more than a matter of lip service and that it is just as much an injustice to allow recovery to a negligent plaintiff as to deny it where he is free from fault and otherwise entitled to recover.
There is no reasonable doubt in my mind that plaintiff's negligence contributed to this accident. The venture of lateral crossing of a busy, four-lane, main highway, controlled by a 50-mile-per-hour speed limit, in the face of oncoming traffic, is an unusually hazardous enterprise. Reasonable prudence in such a situation required of the plaintiff not only careful observation of the distance and apparent speed of defendant's oncoming automobile, but due heed of the fact that one in defendant's position on the highway would not be expecting such a passage across the highway in front of him. It was reasonably incumbent upon plaintiff, therefore, as a matter of the common experience of every operator of a motor vehicle under today's road conditions, to leave himself an ample margin of safety as against oncoming traffic before undertaking a crossing of the highway. The physical facts of this accident almost alone call for the conclusion that plaintiff was wanting in the exercise of such reasonable care as this situation called for, and that his negligence played a contributory role in the collision. (If, as defendant testified without contradiction, he was traveling at 45 miles per hour, it would have taken him about seven seconds to reach the point of plaintiff's crossing. If his speed were greater, plaintiff would have had even less time to cross to the other side of the highway.) My deduction *448 as to plaintiff's negligence is not affected by the recognition of such credibility as the trial court may have felt impelled to accord the plaintiff on such matters as the carefulness of his observation before essaying the crossing, putting on his directional signals, etc. The critical issue is the prudence of his judgment in trying to cross at the precise time and place that he did. Here demeanor and credibility are of comparatively little consequence. Cf. Sunset Beach Amusement Corp. v. Belk, 31 N.J. 445, 453 (1960). The objective facts practically dictate the sound inference. The only factual hypothesis which, in my judgment, could save plaintiff from a fair assessment of contributory negligence would be that at or after the time he started to cross the road defendant suddenly and sharply accelerated the speed of his car beyond plaintiff's reasonable foreseeability. There is no semblance or warrantable inference of such a theory in the record. My vote is for reversal on the factual ground of plaintiff's patent contributory negligence.