652 A.2d 753

RONALD GILGALLON, PLAINTIFF–APPELLANT, v.
CLARA BOND, DEFENDANT–RESPONDENT,
AND EDWARD BOND, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued November 30, 1994—Decided February 6, 1995.

Before Judges SKILLMAN, WALLACE and KLEINER.

*James R. Heaney* argued the cause for the plaintiff-appellant (*Michael Bolton*, of counsel and on the brief; *Mr. Heaney* on the reply brief).

*Alex J. Tannucilli* argued the cause for the defendant-respondent (*Doyle & Brady*, attorneys; *Mr. Tannucilli*, of counsel and on the brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

Plaintiff, Ronald Gilgallon, filed a complaint alleging breach of contract and fraud against defendants Edward and Clara Bond. Summary judgment was granted to defendant Edward Bond. Plaintiff proceeded to a non-jury trial against Clara Bond, and judgment was entered for defendant on June 14, 1993. On July 23, 1993, plaintiff moved, pursuant to *R.* 4:50–1(c), to vacate that judgment predicated upon allegations that defendant and her

husband, Edward Bond, had both offered perjured testimony during the trial.[1]

R. 4:50–1 provides for relief from a judgment or order for reasons including "(c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party[.]" *Ibid.* R. 4:50–2 provides that a motion pursuant to R. 4:50–1(c) "shall be made within a reasonable time, and ... not more than one year after the judgment ... was entered or taken." *Ibid.*

The most definitive discussion of a motion for relief from a judgment due to fraud appears in *Shammas v. Shammas:*

> Perjured testimony that warrants disturbance of a final judgment must be shown by clear, convincing and satisfactory evidence to have been, not false merely, but to have been willfully and purposely falsely given, and to have been material to the issue tried and not merely cumulative but probably to have controlled the result. Further, a party seeking to be relieved from the judgment must show that the fact of the falsity of the testimony could not have been discovered by reasonable diligence in time to offset it at the trial or that for other good reason the failure to use diligence is in all the circumstances not a bar to relief.

> [*Shammas v. Shammas,* 9 *N.J.* 321, 330, 88 *A.*2d 204 (1952) (citation omitted).]

The trial judge concluded that plaintiff's motion failed to clearly and convincingly demonstrate that the false testimony had been "willfully and purposely falsely given," *ibid.,* and that plaintiff through diligence could have offset the false testimony at trial. We conclude that the trial court's decision is " 'so wholly insupportable as to result in a denial of justice[.]' " *Rova Farms Resort v. Investors Ins. Co.,* 65 *N.J.* 474, 483–84, 323 *A.*2d 495 (1974) (quoting *Greenfield v. Dusseault,* 60 *N.J.Super.* 436, 444, 159 *A.*2d 433 (App.Div.), *aff'd o.b.,* 33 *N.J.* 78, 161 *A.*2d 475 (1960)).

We review the facts as we glean them, based on the testimony and exhibits at trial, and pleadings and exhibits offered in support of plaintiff's post-trial motion.

---

[1] Plaintiff's motion was denominated "Motion for Reconsideration." The court considered it as a motion to vacate a judgment pursuant to R. 4:50–1(c).

On January 21, 1978, the Polish–American Center, Inc. was the owner and operator of retail consumption liquor license # C–30 issued by the Town of Harrison, and it operated a liquor business at premises it also owned at 9–11 Patterson Street. It entered into a contract to sell the building, all equipment and the liquor license, as an operating business, to plaintiff and Edward Bond. The purchasers executed the contract as "nominees for a corporation to be formed." The contract was contingent on the buyers securing a first mortgage of $46,500 by February 15, 1978. The balance of the purchase price was to be paid at settlement.

Prior to settlement, which occurred April 10, 1978, plaintiff and Bond formed a corporation under the name Friends, Inc. One hundred shares of common stock were issued: forty-nine shares to plaintiff; one share to plaintiff's wife, Eileen Gilgallon; forty-nine shares to Edward Bond; and one share to Bond's wife, defendant Clara Bond. At settlement, Friends, Inc. executed a purchase money mortgage for $46,000 to the First National Bank and Trust Company of Kearny. A corporate resolution of the sellers, dated April 10, 1978, authorized the sale of 9–11 Patterson Street. The resolution also included the following language: "also includes sale of business, plenary retail consumption license and fixtures as shown on contract of sale."

On February 16, 1978, Eileen Gilgallon and Clara Bond filed an application for the transfer of seller's liquor license to their names and indicated the licensed premises were to be leased from Friends, Inc. A fair inference would be that Eileen Gilgallon and Clara Bond as licensees intended to operate a liquor business at leased premises at 9–11 Patterson Street. In fact, the opposite was the intent of the parties. Friends, Inc. intended to operate a liquor business utilizing a liquor license registered to Eileen Gilgallon and Clara Bond. Friends, Inc. purchased all liquor from suppliers and paid the license fee to the Town of Harrison. Only plaintiff and Edward Bond participated in the daily operation of the business. Eileen Gilgallon and Clara Bond had no active involvement in the business.

On October 18, 1985, Edward and Clara Bond executed a "Sale and Indemnification Agreement" in which they agreed to sell their combined fifty shares of stock in Friends, Inc. to plaintiff for $53,500 and in consideration of plaintiff's agreement to satisfy the existing mortgage on the corporation's building.[2] The agreement provided, in part:

4. *Additional Documents:* Sellers shall also execute and deliver to Buyer, or his attorney, Resignations of office and any other documents reasonably necessary to effect a full and complete assignment of the Sellers' interest in the corporation or its assets, *including any Alcoholic Beverage Control license.*

5. *Indemnification:* ....

Buyer agrees to indemnify and hold-harmless the Sellers on account of any such claims which may be made against the corporation including but not limited to ... all taxes, ABC violations, ... etc.

(Emphasis added.)

After settlement, plaintiff petitioned the Town of Harrison to redeem license # C–30 and to retire the same. In February 1986, the Town adopted a resolution authorizing the retirement of the license upon the payment of $5,000 to the licensees, Eileen Gilgallon and Clara Bond. Plaintiff requested defendant to execute documents necessary to effectuate the license retirement; however, she refused to execute those documents. Her refusal persisted between 1986 and November 8, 1989, when plaintiff filed his complaint alleging breach of contract and fraud in the inducement of the contract.[3]

---

[2] The record is unclear when settlement on the contract occurred. The existing mortgage on 9–11 Patterson Street was canceled January 13, 1986. It may be inferred that settlement occurred either on that date or shortly prior to that date.

[3] Plaintiff's ad damnum clause demanded $50,000. The trial record indicates plaintiff sought damages of $5,000, constituting the sum offered by Harrison to retire the license. This $5,000 sum is no longer available from Harrison as the non-use of the liquor license resulted in the cancellation of the license. Plaintiff additionally sought the annual municipal license renewal fee which was paid in 1986, 1987 and 1988 at $365 per year; an annual fee to the State of New Jersey of $50 per year; attorney's fees and interest. Additionally, plaintiff claimed $3,110.24 paid to the Secretary of State to reinstate the corporate charter of Friends, Inc. as an element of damages. Plaintiff's proofs at trial were complete-

Prior to trial, plaintiff served defendant with interrogatories. Defendant's answers indicated that she served as corporation secretary, but never performed any other corporate duties, that she received no funds from the corporation, and that the annual licensing fee was paid by the corporation. Defendant admitted that she had signed an agreement for the transfer of her interest in Friends, Inc.

Question 15 specifically asked: "Indicate whether you agreed in the Sales Agreement for the sale of stock of Friends, Inc., to execute and deliver any Alcoholic Beverage Control License?" Defendant responded "Yes. See Contract for Sale of Friends, Inc." Additionally, defendant admitted that the liquor license, registered in her name and the name of Eileen Gilgallon, was being used on a "temporary" basis by Friends, Inc.

Prior to trial, plaintiff attempted to gather documents pertinent to the 1979 transaction with Polish–American Center, Inc. and pertinent to the 1986 contract with defendant and her husband. Plaintiff contacted his former attorney, Calvin Koch, Jr., and learned that plaintiff's file was lost. The file loss was attributed to the passage of time and the fact that his former counsel had relocated his law offices after the death of his former senior partner.[4] Plaintiff also made inquiry of defendant's former attorney to secure documentation of the transactions, but was advised that no documentation had been retained.

At trial, plaintiff's proofs consisted of his testimony and of business records maintained subsequent to 1979. The only contractual document offered into evidence was the agreement dated October 18, 1985. Plaintiff also offered defendant's answers to

---

ly deficient to establish any responsibility of defendant for the damage claim of $3,110.24.

[4] At trial, defendant's trial counsel indicated, in response to the court's inquiry, that he too had inquired of Calvin Koch, Jr. seeking pertinent documents and was advised the file was lost. At oral argument before this court defendant's counsel affirmed that representation.

interrogatories. Plaintiff indicated he could not recall who drafted the 1985 agreement and that he was not present at settlement in 1985.

On defendant's case, Edward Bond testified that the liquor license transfer was a separate and distinct transaction from the sale of the business, the real estate and business equipment. He indicated the business had been purchased for $98,000 and that he obtained his one-half contribution by a withdrawal from savings of $7,000, a loan of $10,000 from a pinball machine company, and the purchase money mortgage executed by Friends, Inc. He also indicated that the liquor license was purchased by his wife's separate payment of $2,500. He indicated the 1985 agreement was drafted by plaintiff's attorney.

Defendant stressed in her testimony that the 1979 license purchase was a separate transaction; however, she contradicted her husband and indicated that the purchase price was $5,000 paid by her from her own funds. She also indicated that the 1985 agreement was drafted by plaintiff's attorney.

Defendant admitted that her answers to interrogatories indicated that she had agreed to transfer any liquor license held by the corporation; however, she stressed that her answers to interrogatories did not contain an admission that she had agreed to transfer any interest in a liquor license titled in her name and the name of Eileen Gilgallon. She also indicated that she had questioned her attorney at settlement as to the meaning of paragraph four of the agreement and had been advised that paragraph four was "moot" since the corporation did not own a liquor license.

Without any documents or business records pertinent to either the 1979 or 1985 transactions, plaintiff was unable to rebut the testimony of defendant or her husband. Defendant's counsel urged that the agreement of October 18, 1985 was ambiguous, and as the agreement was drafted by plaintiff's former counsel, any ambiguity should be construed against the drafter.

The trial judge made the following finding:

Of further significance to the Court is the fact that indeed that paragraph, Paragraph 4, is a little weight to the plaintiff's position. For it is indeed a sale looking at the four corners of the bill—of the contract, a sale of the corporation. And the corporation did not indeed own that liquor license. It would appear to me that the contract would have been more specific in reading, it included the liquor license that was issued to the individual wives .of the major stock holders of the corporation. Keeping in mind that the plaintiff had the burden of proof to establish to this Court that the defendants breached this agreement, in that they did indeed intend to sell not only the stock of the corporation but as well the individual rights to the liquor license as held by the two wives in this case.

I am not satisfied as the trier of the facts that the plaintiffs [sic] has met its burden of establishing that there was indeed a meeting of the minds as I've just outlined. There'll be a verdict in favor of the defendant. Exhibits are being returned to the defendants [sic].

Immediately after the trial on June 14, 1993, plaintiff sought to discover information or documentation to prove that defendant and her husband had provided false testimony at trial. Through the intervention of officers of the bank that held the 1979 mortgage given by Friends, Inc., Calvin Koch, Jr. was prevailed upon to search for plaintiff's lost file. That file was in fact located shortly before July 23, 1993, and based on the file contents, plaintiff filed his motion pursuant to *R.* 4:50–1(c).

The file clearly reflected that the entire transaction between Polish–American Center, Inc. and plaintiff and Bond was accomplished by one financial transaction requiring the payment of $58,000 and calling for the transfer of title to the building, the business, equipment and liquor license.

The file contained a letter from defendant's former counsel, dated October 9, 1985, which in part stated:

Since this also involves an ABC license I will also forward an acknowledged "consent to transfer" for the necessary ABC documentation.

. . . .

. . . . Perhaps a Memorandum of Agreement can be drawn covering these items. If you wish, please let me know, and I shall be happy to prepare it.

Those documents, together with a certification from Calvin Koch, Jr., indicating that the agreement of sale was in fact prepared by defendant's former attorney, were submitted to the court in plaintiff's post-judgment motion.

Plaintiff also submitted to the court a certification indicating that prior to trial, he had made an inquiry of defendant's former counsel seeking documentation of the transactions and had learned that he had not retained any documents of the particular transaction.

■ As noted in our preliminary statement, the case most often cited for relief under *R.* 4:50–1(c) is *Shammas v. Shammas, supra.* The standard enunciated in *Shammas* was an interpretation of former *R.* 3:60–2. That rule as adopted did not specifically include a requirement of reasonable diligence on the part of the movant.[5] However, when the Supreme Court adopted *R.* 3:60, entitled "Relief from Judgment or Order" and *R.* 3:60–2, entitled "Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc.," in 1953, subsequent to *Shammas,* it did not adopt "reasonable diligence" as a prerequisite to the grant of relief from a judgment due to fraud. "Reasonable diligence" was not included within *R.* 4:60–2 (amended June 27, 1958, effective September 3, 1958), nor was it incorporated into the present rule, *R.* 4:50–1(c) (amended July 15, 1982, effective September 13, 1982).

We note that *R.* 4:50–1(b), addressing newly discovered evidence, provides that a judgment may be vacated when that evidence "by due diligence could not have been discovered in time to move for a new trial under *R.* 4:49[.]" *Ibid.*

Arguably, the requirement of "reasonable diligence" to vacate a judgment for fraud is simply an interpretation of the rule but is not a mandatory requirement for the grant of appropriate relief. Had the Supreme Court intended to require "reasonable. dili-

---

[5] The court in *Shammas, supra,* 9 *N.J.* at 330, 88 *A.2d* 204, cited *Balip Automotive Repairs, Inc. v. Atlantic Casualty Ins. Co.,* 7 *N.J.* 152, 81 *A.2d* 9 (1951), affirming 8 *N.J.Super.* 238, 73 *A.2d* 848 (App.Div.1950), which reversed on the merits 6 *N.J.Super.* 511, 69 *A.2d* 760 (Law Div.1949). The cited decision, originally *Balip Automotive Repairs, Inc. v. Schroeder,* 6 *N.J.Super.* 511, at 521, 69 *A.2d* 760, at 765 cited *Koop v. Acken,* 90 *Neb.* 77, 132 *N.W.* 721 (1911) and *McDougall v. Walling,* 21 *Wash.* 478, 58 *P.* 669 (1899), as its source for the "reasonable diligence" requirement.

gence," it would have incorporated that standard in *R.* 3:60–2 in reference to fraud or utilized the words "due diligence" as it did with reference to newly discovered evidence after its decision in *Shammas, supra,* 9 *N.J.* at 330, 88 *A.*2d 204. Although we do not conceive that plaintiff's diligence or lack thereof were required to have been evaluated by the trial court, we are able to conclude that plaintiff was in fact reasonably diligent, and the court's conclusion to the contrary was a mistaken exercise of discretion.

■ It is uncontroverted in the record that plaintiff, prior to trial, contacted his former attorney and defendant's attorney seeking copies of any documents pertinent to the 1979 and 1985 transactions. In each instance, that diligent inquiry was unsuccessful.

Plaintiff also argues, and we think correctly, that he could not anticipate from defendant's answers to interrogatories that defendant at trial would interpret the meaning of her interrogatory answer in a strained and unusual fashion. Nor could plaintiff have anticipated that at trial defendant and her husband would both testify that the liquor license was bought in a separate and distinct transaction apart from the purchase of the building, bar equipment and liquor business.

Immediately after trial, plaintiff acted with reasonable diligence. Only thirty-eight days passed between the entry of judgment on June 14, 1993 and plaintiff's motion filed on July 23, 1993. The documents found within plaintiff's former attorney's file revealed that the sale of the building, equipment, and license was one transaction and the purchase price was substantially less than defendant claimed at trial. Of greatest significance, the agreement which defendant claimed to be ambiguous was most probably drafted by defendant's counsel. Any doubt as to that fact was dispelled by the certification of Calvin Koch, Jr. that defendant's former counsel did in fact draft the document.

We also note that the trial court stressed the absence of reasonable diligence but failed to consider the additional standard

discussed in *Shammas*, "that for other good reason the failure to use diligence is in all the circumstances not a bar to relief." *Ibid.* (citing *Balip Automotive Repairs, Inc. v. Atlantic Casualty Ins. Co.*, 7 *N.J.* 152, 81 *A.*2d 9 (1951)).

Even utilizing the additional standard adopted in *Shammas*, we are satisfied that the information gathered post-judgment was "material to the issue tried and not merely cumulative [and would] have controlled the result had it been presented at trial." *Shammas, supra*, 9 *N.J.* at 330, 88 *A.*2d 204.

Plaintiff's proof clearly constituted a *prima facie* demonstration that the defense testimony of two separate financial transactions and the payment of either $5,000 or $2,500 for the liquor license was testimony contrived to buttress defendant's position at trial. The court should have afforded plaintiff the opportunity to prove his contention of perjured testimony by clear and convincing evidence at a plenary hearing. We conclude that it was error to have decided that issue summarily.

We reverse the decision of the trial court which denied plaintiff's motion to vacate the judgment originally entered. We remand to the trial court to conduct a plenary hearing to permit plaintiff the opportunity to provide by clear and convincing evidence that defendant's and her husband's trial testimony was willfully false.