**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0502-16T4

KIM'S INTERNATIONAL, INC.,

    Plaintiff-Respondent/
    Cross-Appellant,

v.

HYUN HEE KIM a/k/a HYUN HEE
HAM KIM,

    Defendant-Appellant/
    Cross-Respondent.

_____

Submitted January 10, 2018 — Decided July 10, 2018

Before Judges Nugent and Currier.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-10049-14.

Kimm Law Firm, attorneys for appellant/cross-respondent (Michael S. Kimm and Adam Garcia, on the briefs).

Matthew J. Jeon, attorney for respondent/cross-appellant.

PER CURIAM

Following a bench trial, the court entered judgment for plaintiff, Kim's International, Inc. (Landlord), for the balance due under a commercial lease, but denied Landlord's claim for counsel fees and costs. Defendant, Hyun Hee Kim (Tenant), had terminated the lease before its term's end, claiming constructive eviction. Tenant appeals the judgment for rent. Landlord cross-appeals the denial of its claim for fees and costs. Because competent evidence in the record supports the trial court's decision concerning rent, we affirm it. Because the parties agreed in the lease Landlord would be entitled to reasonable counsel fees and costs in an action for rent, and because this provision is neither unconscionable nor otherwise unenforceable, we reverse that part of the judgment denying Landlord fees and costs and remand for further proceedings.

Landlord managed a building with an address of 421-425 Broad Avenue, Palisades Park. The building's first floor contained three rental units, 421, 423, and 425. In September 2010, the parties entered into an agreement in which tenant agreed to lease the rear portion of 421 Broad Avenue ("421"), where she intended to operate a skin care facility. The lease term began on September 15, 2010, and ended on "April 31, 2016 [sic]". The ninth paragraph of a "Rider" to the lease provided Landlord could recover attorney's fees and other expenses "[i]n the event of any legal

proceedings . . . against Tenant."  When the parties signed the lease for 421, Tenant was already leasing 425 Broad Avenue ("425"), where she had operated a hair salon successfully for many years.

Tenant vacated the premises at 421 on August 14, 2014, twenty months before the lease expired.  Two months later, in October 2014, Landlord filed a complaint alleging breach of contract, conversion, and unjust enrichment.  In addition to damages, Landlord sought attorney's fees and costs.  Tenant filed an answer and five-count counterclaim alleging breach of the lease agreement, breach of the covenant of quiet enjoyment, breach of the implied covenant of good faith and fair dealing, failure to submit insurance claims, and failure to maintain property.

The court tried the matter over three days.  On the first day, Tenant filed three in limine motions.  The court denied the first — to dismiss the complaint because Landlord had failed to mitigate damages — as a dispositive motion improperly filed as an in limine motion rather than a summary judgment motion.  The court reserved decision on the second and third — to exclude evidence concerning the space tenant leased at 425 for the hair salon, and repair bills for the third first-floor unit, 423 — until the context became clear at trial.

Following the close of the proofs, the parties requested, and the court permitted, post-trial briefs.  Landlord requested

attorney's fees and costs in its brief. Before the court rendered a decision, Tenant filed a motion to reopen her case. She sought to present evidence Landlord had listed the building for sale prior to the expiration of her lease. She claimed the evidence was relevant to Landlord's obligation to mitigate damages. The court denied the motion.

The court entered judgment for Landlord for $95,828.47. The judgment did not include attorney's fees. Landlord filed a motion for reconsideration, seeking attorney's fees as provided for in the lease. Although Landlord had not presented specific proofs at trial as to attorney's fees, as previously mentioned, it had demanded fees in the complaint and requested fees in its post-trial submission. The court denied Landlord's motion for reconsideration on the ground the court no longer had jurisdiction, because Tenant had filed a notice of appeal from the judgment.

The parties did not dispute at trial either the lease terms or that Tenant vacated 421 in August 2014 before the lease term ended. Their primary dispute was whether Tenant vacated because 421 had become uninhabitable due to water penetration and bugs or because her skin care business had failed. They also disputed whether Landlord had attempted to mitigate its damages.

Landlord presented two witnesses: its principal and its real estate broker. The principal denied Tenant vacated due to water

leaks originating from the second floor, as she claimed. Explaining the background of issues involving water backup in 421, he cited the following provision in the 421 lease:

> The Landlord will not be liable for any damage or injury which may be sustained by the Tenant or any other person, as a consequence of the failure, breakage, leakage or obstruction of the water, plumbing, steam, sewer . . . resulting from the carelessness, negligence or improper conduct on the part of any other tenant or of the Landlord or the Landlord's or the Tenant's or any other tenant's agents, employees, guests, licensees, invitees, subtenants, assignees or successors . . . .

According to Landlord's principal, the reason for this provision was Tenant had misused the plumbing in 425 and caused "backing up of the toilet and sewage." For that reason, the lease also contained a rider with the provision that "Landlord shall be responsible for the structural repair items only. Tenant shall . . . make all repairs . . . and shall maintain in good order and condition, the mechanical systems, including the plumbing. . . ."

Landlord's principal claimed with one exception, the only time water penetrated 421 from above occurred during summer months, when condensation from air conditioning pipes caused "little drips of water" to spot the ceiling tiles, which were "exactly [the] same tile[s] [as] in this [c]ourtroom." The exception occurred in July 2014, when a pipe leaked and a contractor had to open the

wall to repair it. Landlord's principal acknowledged there was mold in the wall around the leaking pipe and he never called a mold remediation service to address it, but he said he had a contractor repair the pipe the day after it leaked and there was never a reoccurrence. He also testified he inspected the piping on the second floor and made repairs and updates to ensure there were no leaks.

When confronted on cross-examination with photographs of buckets allegedly placed to catch dripping water, and one bucket containing water near its bottom, the principal denied ever seeing them. He insisted most of the water damage Tenant experienced resulted from her toilets and sewage backing up from her misuse of the utilities, as "bundles of paper towel[s] came out . . . of the toilet."

Questioned about his attempts to mitigate damages, Landlord's principal confirmed at most he was only looking for a tenant for one and one-half years. He stated he initially got a permit to renovate his building in 2013, but had to resubmit another application on December 3, 2014, because of objections from the neighbors.

Landlord's real estate broker testified he began working for Landlord in November 2014 after Tenant vacated 421. The broker uploaded an advertisement on November 24, 2014, to the multiple

listing site (MLS), which targets agents looking for a commercial space to rent. In addition to the MLS, the broker advertised in Korea Times, Central Daily, and Monthly Real Estate Information Magazine, all of which are publications in Korean. He also sent the information directly to the headquarters of Hanmi Bank. For the listings, an architect's rendering of the façade for the renovations was used, rather than a picture of the actual "old and . . . run down" building. Asked why he did not advertise in the English press, the broker explained "the space . . . in Palisades Park . . . [is] usually for the Korean customers." Landlord had not told the broker of any leaks in the ceiling or walls.

Although the broker had received some inquiries, as of the time of trial, he had been unable to find new tenants. Due to Landlord's plan to renovate, the listing was "for about two years," with priority given to renew the lease after renovations were complete.

Tenant testified she leased 421 to open a skin care business where customers would come to rest and "do [their] face to get prettier." The setting of such a business must be pristine as customers expect to be able to relax in a clean, comforting environment. In order to open this business, Tenant claimed she had to renovate the premises, which involved cleaning them thoroughly because they had previously been raided by the FBI. In

addition, Tenant claimed she built new rooms in the rental space and ultimately spent seven months and more than $100,000 making renovations. However, Tenant could not produce any receipts for the renovations or cleaning work.

Tenant testified the water intrusions at 421 had occurred since 2010, and gradually increased in severity until they occurred almost daily. She claimed that complaints to the landlord only resulted in him yelling and screaming and saying she was not acting properly. She stated, "[w]hen he scream[ed] and yelled, [she] heard that he wanted [her] to leave." She felt the Landlord did not want her there, so she vacated the premises.

Tenant identified a series of photographs and testified they depicted water that came from many different places, created a terrible smell, and had to be cleaned up daily. Some of the photos depicted receptacles Tenant and her employees used to scoop up the water. According to Tenant, the water on the floor came from the wall and sometimes from the ceiling. The photographs depicted white towels Tenant used to impede the flow of water, scoop the water, and put it in buckets. Tenant testified the photographs were taken in June, July, and early August 2014.

Tenant also identified photographs of the opening in the wall when Landlord fixed the leaking pipe. Tenant testified the photos

A-0502-16T4

depicted rotting wood and "rotten mold." She also testified the wall continued to leak after Landlord supposedly fixed the pipe.

In addition to the leaks, bugs infested 421. Tenant and her employees sprayed bug spray every day. Tenant identified photographs of what she claimed were the bugs.

Tenant also showed a video depicting, according to her, "water continuously like seeping — coming out and the little things there and that — that's all bugs." She told the court a lot of "black stuff" "around the edge" was "all mold" and "[t]owards the wall it's the worst." She thought the video was taken in July 2014.

Tenant wrote two letters to Landlord complaining about the situation, and her attorney wrote a third. She explained that a letter dated August 26 was written because she "was going through [a] very hard time and [the skincare] business was closing." She testified she had vacated the premises because the water continued to leak and there were no customers due to the smell and bugs. She also testified there were rumors in the community about her store, and she had "borrowed a lot of money to make rental payment[s] . . . [she had done her] best, but [she] could not continue anymore." Therefore, she vacated the premises at the end of August and returned the keys to Landlord sometime in September.

During cross-examination, Landlord asked Tenant to produce the cellular phone with the photographs and video she had taken.

After verifying Tenant still had the phone, the court told defense counsel to have Tenant produce it the next court day. Tenant did not produce it. Tenant also told the court she had taken pictures of the leaks that occurred before 2014, but the camera had broken and everything had been lost.

Landlord's counsel cross-examined Tenant about Landlord's 2014 suit to evict her for non-payment of rent. Tenant claimed she did not remember. When asked if she recalled Landlord had agreed to reduce her rent in exchange for her payment of the late rent, she responded, "I mean, I don't really remember the — the detail of it, but I remember — I remember that the — because of the leak and the — the landlord, you know, would give us a reduction on the rent. That I remember a little." When further asked if she remembered asking for a reduction in the rent because business was difficult, she responded "I mean, I don't remember the exact detail, but, I mean, then that leak was really bad and compared to other stores around that area, the rent — my rent was high and — and I do remember — yes. There was a reduction in the rent. But I don't remember exactly." When asked whether she had put up a defense and raised the issue of habitability in the previous action, she said "No, I don't really remember exactly."

Based on the foregoing evidence and testimony, the court entered judgment for Landlord against Tenant for $95,828.47 on

Landlord's claim for Tenant's breach of the commercial lease. The order dismissed Tenant's counterclaims with prejudice and provided, "[a]ny claims pleaded and not addressed herein are deemed abandoned."

In its opinion, the court found Tenant failed to sustain her burden of proving her affirmative defenses, specifically, her claims for breach of the covenants of habitability and quiet enjoyment. After recounting the considerable conflicting testimony as to the cause of water on the premises — either leaking or backed-up plumbing — the court resolved the conflicting testimony and credibility issues in favor of Landlord. The court cited Tenant's testimony that she had taken much of the photographic evidence on a cell phone she still possessed and Tenant's failure to produce the cell phone to verify the date the photos were taken. The court noted tenant did not present witnesses who allegedly participated in the water cleanup. The court also found significant Tenant's non-mention of any of her habitability complaints when defending the eviction action three months before she vacated the tenancy.

The court observed Tenant had not produced "any documentation of any complaints made by [Tenant] to the [L]andlord prior to July 2014." As to the issue of bug infestation, the court noted "the lease made clear that [Tenant] was obligated to use the services

11

of an exterminator and she never did so throughout the entire period of the lease from September 2010." For that reason, the court concluded Tenant could not "establish that any pest problem that might have existed on the premises was the responsibility of . . . [L]andlord or due to any negligence or action of the [L]andlord."

Addressing the issue of mitigation, the court was persuaded by the testimony of both Landlord's principal and its real estate broker. The court rejected Tenant's argument that because Landlord intended to renovate the building and was therefore unwilling to accept a lease beyond the term of the one with tenant, Landlord had failed to mitigate its damages.

Considering all of the evidence, the court concluded it was:

> [M]ore probable than not that [Tenant] was not able to make a financial success of the business, [and] that this caused her to fall behind in the rent earlier in 2014, and then when the incident occurred in July 2014 she made a decision to attempt to get out of her obligations under the lease.

On appeal, Tenant argues:

> I. BECAUSE THE LANDLORD COMMITTED ANTECEDENT BREACHES OF THE LEASE, WITH EXTENSIVE WATER LEAKAGE DAMAGE CAUSED TO HYUN HEE KIM'S BUSINESS OPERATIONS, HYUN HEE KIM WAS RELIEVED OF ANY OBLIGATION TO CONTINUE UNILATERAL PERFORMANCE OF THE LEASE

12

II. BECAUSE THE LANDLORD BREACHED THE MOST IMPORTANT COVENANT FOR A TENANT — THE ABILITY TO USE THE PREMISES FOR THE TENANT'S BUSINESS — THE LANDLORD SHOULD BE ORDERED TO DISGORGE ALL RENT PAID BY HYUN HEE KIM UNDER SETTLED EQUITABLE PRINCIPLES

III. BECAUSE THE "APRIL 2014 TENANCY SUIT STIPULATION" DOES NOT FORECLOSE THE CLAIMS OF HYUN HEE KIM, AND THOSE RECORDS WERE NEVER PRODUCED IN DISCOVERY, THE COURT SHOULD REJECT THE LANDLORD'S INNUENDO THAT THE APRIL 2014 STIPULATION SOMEHOW PRECLUDES HER CLAIMS THROUGH APRIL 2014

IV. BECAUSE THE LANDLORD FAILED TO PRESENT ANY PROFESSIONAL OR EXPERT TESTIMONY ON THE ALLEGED "REPAIRS," THE PURPORTED INVOICES ADMITTED AS THE LANDLORD'S BUSINESS RECORDS, I.E., "AS RECEIVED," WITHOUT THE UNDERLYING SERVICE EXPERTS, IS NOT PROBATIVE OF ANY FACT OTHER THAN THE LANDLORD PAID NOMINAL SUMS FOR PLUMBING SERVICES

V. BECAUSE THE LANDLORD FAILED TO MITIGATE DAMAGES, AND FAILS TO PRESENT A PRIMA FACIE CASE, THE COMPLAINT SHOULD BE DISMISSED

VI. THE TRIAL COURT'S FAILURE TO GRANT HYUN HEE KIM'S MOTIONS IN LIMINE SHOULD BE REVERSED

Having considered Tenant's arguments in light of the record and controlling legal principles, we find them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add the following brief comments.

13

Tenant's Points I, II and V represent her disagreement with the trial court's factual and credibility determinations. When we review a judgment entered in a non-jury case, we will not disturb the trial court's findings of fact unless "they are so wholly [u]nsupportable as to result in a denial of justice." Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 483-84 (1974) (quoting Greenfield v. Dusseault, 60 N.J. Super. 436, 444 (App. Div. 1960)). Here, the trial court's factual and credibility determinations are amply supported by credible evidence on the record.

In Points III and IV, Tenant misapprehends the purpose for which the evidence of the previous suit and the repair bills were introduced, and in any event, we discern no abuse of discretion in the trial court's decision to admit the evidence. See Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016).

Last, we discern no abuse of discretion in the trial court's disposition of Tenant's motions in limine. One of the in limine motions was in reality a dispositive motion labelled "in limine" and filed on the day trial was to begin. The trial court would have violated Landlord's right to due process had it disposed of the motion and the case. Cho v. Trinitas Reg'l Med. Ctr., 443 N.J. Super. 461, 464 (App. Div. 2015), certif. denied, 224 N.J. 529 (2016). As to the other two in limine motions, we note a

14

trial court's ruling on a motion in limine is by its nature preliminary. It is difficult to discern a situation in which a judge presiding over a bench trial could commit error by deferring a ruling on a motion in limine until the issue crystallizes during the trial.

Landlord contends on his cross-appeal the trial court erred by denying its claim for counsel fees and costs. The 421 lease provided for counsel fees and costs. Landlord demanded fees and costs in its complaint, and Landlord reiterated that demand in its post-trial submission. Perhaps it would have been more prudent to raise the issue during preliminary discussions at the trial's inception, but we can discern nothing in the record that suggests Landlord either waived or abandoned its right to seek counsel fees. Rather, it appears the trial court overlooked the issue. For that reason, to the extent the final judgment is construed as a denial of Landlord's claim for fees and costs, we reverse and remand for consideration of the issue. Our decision should not be construed as suggesting how the matter should be decided.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0502-16T4