# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2137-24

IN THE MATTER OF
K.P., AN ALLEGED
INCAPACITATED PERSON.

_____

Submitted January 22, 2026 – Decided April 23, 2026

Before Judges Gummer and Jacobs.

On appeal from the Superior Court of New Jersey, Chancery Division, Somerset County, Docket No. P-000213-25.

Lee B. Roth, attorney for appellants L.T. and D.P.

Russo Law Offices LLC, attorneys for respondent J.P. (Brad M. Russo, on the brief).

Weiss Law, LLC, attorney for respondent K.P. (Nina E. Weiss, on the brief.)

PER CURIAM

L.T. (Lori) and D.P. (David) appeal from a February 11, 2025 order denying their petition to compel their mother, K.P. (Kim), to submit to capacity

evaluations as an alleged incapacitated person (AIP) and to allow them "direct access to [Kim] without interference" from their sister J.P. (Joy).[1] We affirm.

I.

Kim is an eighty-six-year-old widow who resides in Somerset County. She has three children: appellants Lori and David and respondent Joy. Following her husband's death in 2019, Kim executed a durable power of attorney, advance directive for health/medical decision power of attorney, living will, and last will and testament. In each, she named Joy as her primary agent and Lori as alternate. In September 2024, Kim executed a new general durable power of attorney, again naming Joy as primary agent and Lori as alternate.

A "period of distrust" arose in late 2024, when Lori and David believed Joy was isolating Kim from them and their children. Consequently, Lori removed $24,927.94 from Kim's bank accounts and transferred those monies to her own account.

Lori arranged for Arun S. Rao, M.D. to conduct a capacity evaluation of Kim on December 11, 2024. The evaluation was terminated prematurely because neither Kim nor Joy had been informed of its occurrence in advance

---

[1] We refer to the parties by initials and pseudonyms for ease of reading, to protect their privacy, and to maintain the confidentiality of these proceedings. R. 1:38-3(e).

A-2137-24

and, according to Dr. Rao's report, Kim "did not want to continue with [the evaluation] any more." Notwithstanding the abbreviated session, Dr. Rao stated in his report "there are indications that [Kim] does not seem fully aware of her medical, medication, or financial affairs." However, he concluded that a complete evaluation would be needed to definitively comment on her capacity. Dr. Rao also recommended Kim "would benefit from a second evaluation by a physician for her decision[-]making capacity."

In January 2025, Lori filed a verified complaint and an application for an order to show cause, requesting, among other things, the court order Kim to "submit to a complete evaluation" for determination of her competency. The Somerset County Deputy Surrogate returned the papers, advising the application "be filed as a standard application for guardianship" and providing instructions for proper filing, including the need for two medical certifications. Lori filed a revised application, including a certification regarding the incomplete evaluation from Dr. Rao.

On February 5, 2025, Kim's court-appointed counsel, Nina Weiss, Esq., interviewed Kim and submitted a detailed report to the court on February 10. She noted that although there were "open financial issues[,]" they did not "rise to the level of [requiring] a protective arrangement," especially given Kim's

A-2137-24

existing powers of attorney. Kim requested the return of $24,927.94 from Lori and confirmed her preference for Joy as her agent.

The trial judge held an expedited hearing on February 11, 2025. Appellants' counsel spoke on behalf of his clients, explaining Lori had withdrawn the sum in question because Joy had also withdrawn "approximately a quarter of a million dollars" from Kim's bank accounts and placed those funds in a joint account controlled by Kim and Joy. Consequently, Lori "was afraid that there might not be the money needed to care [for Kim] if [Joy] were to lose, or do something, or take and expend, or in some way get rid of that [approximately quarter of a million dollars]." Counsel argued Joy's actions required his clients to have direct contact with Kim and asked the court to preclude further contact between Kim and Joy.

Counsel for Joy spoke on behalf of his client, stating it was "wild speculation" to suggest Joy might breach her fiduciary duty by dissipating funds needed to sustain Kim. Weiss spoke at the hearing on Kim's behalf. Weiss stated she found Kim "absolutely competent" and able to make decisions, though "certain things are fuzzy."

The parties did not call any witnesses. However, appellants' counsel said to the judge,

You have just heard about an hour's worth of hearsay.

The one person who's not here, and I suggest should have been before your Honor, is [Kim,] so that you would have the opportunity to reach your own conclusion to what extent is she dominated and under the control of her daughter [Joy], to what extent is she operating intelligently with her own free will.

The judge then articulated her findings of fact and conclusions of law, recounting that "[t]his application apparently started with an [o]rder to [s]how [c]ause filed by [Lori]" that was rejected by the surrogate, and noting "this court has never even seen that application." The judge had seen "a partially completed application for a guardianship[,]" that was "incomplete[,] as it only had a partial certification from one doctor, who then indicated that he had terminated his evaluation."

The judge explained that because she "saw some concern that there might be a vulnerable adult at risk, [the judge had] appointed Nina Weiss to serve as the AIP's attorney, hoping that a report . . . would illuminate what exactly is happening, and whether the [c]ourt needs to intervene to protect a vulnerable individual." The judge found, "[b]ased upon the documentation that's been provided to the [c]ourt[,] . . . that there is no need for a protective arrangement" or a guardianship. Drawing from Weiss's report, the judge found Kim to be

5

"pretty much an independent woman at the age of 85. She can handle her own finances. And although she does have moments of confusion at times, she is certainly not in any position to be deemed an incapacitated person."

The judge ordered Lori to return the $24,927.94, finding no basis for Lori to have taken or retained those monies. The judge further found that Kim "became extremely upset" by this "improper taking." The distrust generated by this incident made rational Kim's wish not to see Lori and, by extension, David, the children who initiated litigation to supplant Joy as Kim's agent and declare Kim an AIP. Consistent with this finding, the judge denied appellants' application to have "direct access" to Kim. Lastly, the judge denied the request to compel capacity evaluations, finding them unnecessary.

On appeal, Lori and David argue: (1) Superior Court judges "may not preemptively refuse to accept a complaint, motion[,] or other pleading"; (2) "[t]here is no specific provided process of obtaining medical reports or evaluations of a person claimed to be lacking competence other than that followed by [Lori] in this case"; and (3) the judge erred by not requiring Kim to appear personally at the hearing.

A-2137-24

II.

We review the denial of equitable remedies for abuse of discretion.  Sears

Mortg. Corp. v. Rose, 134 N.J. 326, 354 (1993).  A court abuses its discretion

when its decision lacks "a rational explanation, inexplicably depart[s] from

established policies, or rest[s] on an impermissible basis."  Flagg v. Essex Cnty.

Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. &

Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).  We defer to the trial

court's findings unless they are so clearly "insupportable as to result in a denial

of justice."  Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 483-

84 (1974) (quoting Greenfield v. Dusseault, 60 N.J. Super. 436, 444 (App. Div.

1960)).

Dismissal of Guardianship Petition

An action for guardianship of an AIP is governed by statute and court rule.

N.J.S.A. 3B:12-24 to -29; R. 4:86-1 to -8.  A person is incapacitated if she "is

impaired by reason of mental illness or mental deficiency to the extent that [she]

lacks sufficient capacity to govern [her]self and manage [her] affairs."  N.J.S.A.

3B:1-2.  Pursuant to Rule 4:86-2(b)(2), a complaint for a determination of

incapacity and for the appointment of a guardian must include "affidavits or

certifications of two physicians having qualifications set forth in N.J.S.A 30:4-

A-2137-24

27.2(t), or . . . one such physician and one licensed practicing psychologist as defined in N.J.S.A. 45:14B-2," stating "the extent to which the alleged incapacitated person retains sufficient capacity to retain the right to manage specific areas, such as residential, educational, medical, legal, vocational or financial decisions[.]" R. 4:86-2(b)(2)(g). The affidavits or certifications must address the results of an examination of the person occurring within thirty days of the filing of the complaint and express an opinion and prognosis about the fitness of the AIP and her ability to govern herself and manage her affairs. R. 4:86-2(b)(2).

Here, appellants' petition included only a certification from Dr. Rao, who had not completed his evaluation and did not attend the hearing. Nothing in the record suggests Dr. Rao was prevented from attending the February 11 hearing. More importantly, because the guardianship filing was defective from the outset, the trial court did not err in dismissing the petition as "incomplete."

Appellants argue the surrogate lacked authority to reject appellants' initial filing, brought as an order to show cause. We disagree. Rule 4:86-3A(a) requires, "[p]rior to docketing, the Surrogate shall review the complaint to ensure that proper venue is laid and that it contains all information required by R. 4:86-2." This is exactly what the surrogate did: the filing was rejected

8

because, on its face, it failed to meet the requirements outlined above. Moreover, Rule 4:86-4(a)(1) provides, "[i]f the court is satisfied with the sufficiency of the complaint and supporting affidavits and that further proceedings should be taken thereon, it shall enter an order fixing a date for hearing." The judge stated she had not seen the first filing. Even if she had, as her final ruling reflected, she would have acted within her authority to return an incomplete application and provide instructions for proper filing, as the surrogate did. Finally, we note appellants did not object to the surrogate's initial action or seek to file the original petition "as is." Instead, they submitted a new, but still incomplete, application.

Compulsion of Capacity Evaluations

Rule 4:86-2(c) provides a mechanism for seeking court-ordered capacity evaluations when the petitioner cannot secure the required certifications. The Rule requires a petitioner to state the reasons for the inability to obtain the certifications and to submit an affidavit with "as much information as can be secured in the exercise of reasonable diligence." R. 4:86-2(c)(1). Rule 4:86-4(c) allows the court, on motion and notice, to "order the [AIP] to submit to an examination."

Appellants did not meet the threshold requirements of Rules 4:86-2(c) or 4:86-4(c). The only medical report submitted did not conclude incapacity. The trial judge had before her a January 8, 2025 letter from Kim's primary physician, Dr. Yimei You. In that letter, Dr. You wrote Kim "is mentally and physically capable of writing and executing contracts." Further, she stated Kim "possesses the necessary cognitive ability and judgment to engage in legal and contractual agreements." Court-appointed counsel also referenced Dr. You's letter in her report finding Kim competent. On these facts, we are satisfied the trial judge acted within her discretion in declining to compel further capacity evaluations.

Kim's Presence at the Hearing

Rule 4:86-5(a) and (c) provide for the possibility of the AIP appearing through her attorney, rather than personally:

> (a) Not later than ten days prior to the hearing, the plaintiff shall file proof of service of the notice, order for hearing, complaint and affidavits or certifications and proof by affidavit that the alleged incapacitated person has been afforded the opportunity to appear personally or by attorney, and that he or she has been given or offered assistance to communicate with friends, relatives or attorneys.
>
> . . . .
>
> (c) The plaintiff or appointed counsel shall produce the alleged incapacitated person at the hearing, unless the plaintiff and the court-appointed attorney certify that

10

the alleged incapacitated person is unable to appear because of physical or mental incapacity.

[R. 4:86-5(a), (c).]

Here, court-appointed counsel appeared for Kim and reported Kim's objection to appellant's petition. Because Kim prevailed based on initial procedural defect in the application, strict compliance with subsection (c) of the Rule was not implicated.

From our record review, we are satisfied the trial judge's findings are supported by sufficient reliable evidence. Kim executed estate-planning documents naming Joy as her agent and lives independently with appropriate support. The only medical evidence presented by appellants was incomplete and inconclusive. The court-appointed counsel and Kim's treating physician found Kim competent. We discern no abuse of discretion by the trial judge in denying the guardianship petition, declining to compel further capacity evaluations, and permitting Kim to appear through counsel.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2137-24